United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN B. BUCKHEIT,<br><br>　　　　Plaintiff(s),<br><br>　　v.<br><br>TONY DENNIS, ET AL.,<br><br>　　　　Defendant(s).<br>_____/ | Case No. C 09-5000 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br>**[Docket Nos. 24, 31]** |

## I.　INTRODUCTION

Plaintiff Jonathan Buckheit (hereafter "Plaintiff") filed this action, alleging federal and state law claims arising out of his arrest and imprisonment resulting from a domestic dispute at his home. Defendant Town of Atherton and Officers Tony Dennis, Dean DeVlugt, and Anthony Kockler (hereafter "Town" and "Officer Defendants") and Defendant County of San Mateo (hereafter "County") filed separate Motions to Dismiss the First Amended Complaint in its entirety. Plaintiff opposes both motions.[1] The parties have consented to the jurisdiction of this court. A hearing was held on May 7, 2010 at 9:30 a.m., at which counsel for the parties appeared.

The Court has reviewed the papers submitted and the arguments of counsel at the hearing. For the reasons explained below, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motions to Dismiss. Plaintiff will be given one opportunity to amend the First Amended Complaint, as discussed in greater detail below. Plaintiff's Second Amended Complaint shall be filed within thirty (30) days of the date of this Order.

---

[1] Plaintiff and Defendants have filed separate requests that the Court take judicial notice of several public documents, both pleadings filed in the related state proceedings in this case and town of Atherton regulations. The requests are unopposed and the Court GRANTS the requests to take judicial notice.

## II.  BACKGROUND[2]

### A.  Factual Background

On the night of October 19, 2008, Plaintiff Jonathan Buckheit was at home located at 34 Selby Lane, Atherton in San Mateo County, California. First Amended Complaint ("FAC") ¶ 12. Plaintiff telephoned "911" and sought the aid of the Atherton Police Department regarding a dispute with his then girlfriend/housemate. *Id.* ¶ 13. Defendants Tony Dennis, Dean DeVlugt and Anthony Kockler were, at all relevant times, police officers employed by the Town of Atherton Police Department. *Id.* ¶¶ 5-7. Officers Dennis and DeVlugt reported to Plaintiff's home in response to the call. *Id.* ¶ 14. After conducting an investigation, Defendants arrested Plaintiff for violating California Penal Code Section 273.5 against both his girlfriend and her minor son (willfully inflicting on a spouse or co-habitant corporal injury resulting in a traumatic condition). *Id.* ¶15. According to Plaintiff, "[t]he arrest was wrongful, without probable cause, and in violation of Mr. Buckheit's 4th and 14th Amendment rights. The arrest and related recommendation for criminal prosecution were made solely or primarily on the basis of Mr. Buckheit's gender (a male) and for illegal discriminatory purposes." *Id.* ¶ 15. Plaintiff posted bail and was released from the San Mateo County Jail on October 20, 2008. *Id.*

Subsequent to his release from custody "while still acting under color of law, [the Officer Defendants] unreasonably and unlawfully harassed, intimidated, and/or defamed Mr. Buckheit and inflicted physical and emotional pain and suffering." *Id.* ¶16. The wrongful acts included an application for an order from San Mateo County Superior Court for Plaintiff to leave his home and stay away from his girlfriend. *Id.* In addition, the Officer Defendants reported the domestic violence incident to Child Protective Services, which "place[ed] him in jeopardy of being wrongfully listed in California's Child Abuse Central Index. All such wrongful acts defamed Mr. Buckheit." *Id.* Plaintiff further alleges that Defendants retaliated against Plaintiff for his decision to "exercis[e] his First Amendment right of free speech and the right to petition the Government for a redress of grievances in complaining to the Defendants and their superiors about the discriminatory

---

[2] The Court accepts all well-pled factual allegations of the complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996).

treatment in the Defendants' investigation of the 911 call and their decision to arrest him without proper or reasonable cause." *Id*. ¶ 32.

On January 12, 2010, the San Mateo County Superior Court granted Plaintiff's application for a finding of factual innocence. *Id*. ¶ 17  No criminal charges were ever filed against Plaintiff. *Id*.

### B. Procedural History

Plaintiff filed his first Complaint on October 20, 2009.  Thereafter, on January 5, 2010, Defendant County of San Mateo filed a motion to dismiss.  Rather than oppose the motion, Plaintiff filed his First Amended Complaint on January 25, 2010, which added Defendant Kockler and added a claim for retaliation under the First Amendment.  The Town Defendants and County have filed separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff alleges that the Town of Atherton, the individual officers and the County of San Mateo violated his civil rights in that they arrested him in violation of the Fourth Amendment because his arrest was without probable cause, and also that he was arrested on the basis of his gender, in violation of the Equal Protection clause of the Fourteenth Amendment.  Plaintiff also alleges that the Defendants violated the First Amendment by retaliating against him as a result of his complaints to Defendants and their superiors regarding the circumstances of his arrest and his request for a copy of the police report in this case.  Plaintiff also alleges that the Defendants conspired to violate the above-mentioned civil rights.

### C. The Defendants' Motions

The Town and Officer Defendants move to dismiss all claims against them, first on the ground that the First Amended Complaint as a whole, fails to satisfy the Supreme Court's most recent articulation of the federal pleading standard. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).  The Town and Officer Defendants also argue that Plaintiff's claims under 42 U.S.C. § 1983, including claims based upon the First, Fourth and Fourteenth Amendments, as well as the "defamation claim," other state law claims, and conspiracy to violate civil rights claim fail to state claims upon which relief may be granted.  The Town further argues that the second claim for municipal liability against the Town of Atherton cannot stand and that amendment would be futile.  Finally, the Town and Officer Defendants argue that Defendants have "absolute and/or

3

qualified immunity against Plaintiff's civil causes of action." Town Motion at 2. Defendants argue that they are immune from suit – both state and federal claims – under California Government Code §821.6. And for the first time in their reply brief, the Town and Officer Defendants also argue that California Penal Code § 11172 provides absolute immunity to the Officer Defendants based upon their status as mandatory reporters of suspected child abuse under state law.[3]

The County's Motion similarly asserts that the entire Complaint alleges conclusory facts and fails to link the Plaintiff's harm to any actions of the County. The County argues, further, that the claim for municipal liability fails to state a claim because the County and Town of Atherton are separate entities; the officer Defendants are not employed by the County. The County also argues that Plaintiff's allegations regarding agency, joint and several liability and conspiracy are mere legal conclusions and thus cannot be accepted as true on a motion to dismiss. The County contends that Plaintiff is barred under the doctrine of collateral estoppel from litigating the claim related to the Defendants' failure to provide Plaintiff with a copy of the police report based upon the Petition for Writ of Mandate that Plaintiff filed in Superior Court of San Mateo seeking to compel Defendants to provide him with a copy of the report pursuant to California Government Code § 6254(f).

### III. ANALYSIS

#### A. Legal Standard – Motion to Dismiss

Under Fed.R.Civ.P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. at 555. (internal quotation and modification omitted). To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. at 1950. "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id.* at 1949-50.

---

[3] Defendants also argue that Plaintiff's claim related to his application for factual innocence is not admissible in court under state law and that the allegations should therefore be dismissed or stricken. Town Motion at 8. Defendants similarly argue that Plaintiff's claim for "wrongful or false reporting" must be dismissed for failure to state a claim based upon the fact that under California Civil Code Section 47, police reports are privileged. As described below, Plaintiff's state law claim – to which these laws might apply – is dismissed with leave to amend. Accordingly, the Court declines to address these issues.

4

A complaint may be dismissed for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. 544 (quoting *Car Carriers, Incl v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984) (internal quotations omitted; emphasis in original). Together, *Iqbal* and *Twombly* represent "a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, 'plausibly give rise to an entitlement to relief.'" *Fallcochia v. Saxon Mortg.*, 2010 WL 582059 (E.D. Cal. Feb. 12, 2010) (citing *Ashcroft v. Iqbal* 129 S.Ct. at 1950); *Erickson v. Pardus*, 551 U.S. 89 (2007). "Plausibility," as used in *Twombly* and *Iqbal*, refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). If allegations in a complaint are "no more than conclusions," then they are not "entitled to the assumption of truth." *Id.*

A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B.  Sufficiency of the Allegations as a Whole**

In their separate motions to dismiss, all Defendants move to dismiss the First Amended Complaint in its entirety on the grounds that it is a recitation of legal conclusions and elements of particular statutes without sufficient factual allegations in support. Defendants argue that Plaintiff simply tracks statutory language or raises general allegations of discrimination and that this violates the most recent enunciation of the federal pleading standard as set forth in *Twombly,* 550 U.S. at 544 and *Iqbal* 129 S.Ct. 1937. This is not a case where Plaintiff merely recites the statutes and alleges generally that Defendants violated all of them without providing specific facts that are unique to his

5

case. However, as will be explained in greater detail below, there are deficiencies in the claims that require amendment, including all claims against the County of San Mateo. The Court will allow Plaintiff an opportunity to amend his First Amended Complaint to correct these pleading deficiencies.[4]

### C. Failure to State a Claim

Defendants move to dismiss all claims on the ground of failure to state a claim.

#### 1. First Claim – 42 U.S.C. § 1983 (Defendants Dennis, DeVlugt, and Kockler) Under Fourth and Fourteenth Amendments

The individual officer Defendants argue, based upon *Twombly* and *Iqbal* that the first claim under 42 U.S.C. §1983 fails to state a claim. They argue that this claim contains mere recitations of legal conclusions without factual support. In support of this argument, Defendants parse the First Amended Complaint, citing to the conclusions of the claim, and disregard the facts pled by Plaintiff. Plaintiff's First Amended Complaint includes § 1983 claims alleging violations of both the Fourth and Fourteenth Amendments.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . .

42. U.S.C. §1983. Further, "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). "Liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985 (*en banc*).

---

[4]In addition, although not argued by Defendants, the Court hereby DISMISSES all DOE Defendants named in the First Amended Complaint. "Generally, 'Doe' pleading is improper in federal court. *See Bogan v. Keene Corp.*, 852 F.2d 1238, 1239 (9th Cir.1988). There is no provision in the Federal rules permitting the use of fictitious defendants. *Fifty Associates v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir.1970)." *McMillan v. Department of the Interior*, 907 F.Supp. 322 (D.Nev.1995). A party may, upon learning of the participation of additional parties, move to seek to amend the complaint (or answer) and have the amendment relate back in time to the original filing if the circumstances justify it. *Graziose v. American Home Products Corp.*, 202 F.R.D. 638, 643 (D. Nev. 2001).

6

In order to state a claim for violation of the Equal Protection clause of the Fourteenth Amendment, a plaintiff must allege that the individual defendants, acting under color of state law "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citation omitted). A "long line of Supreme Court cases make clear that the Equal Protection clause requires proof of discriminatory intent or motive." *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995) (citations omitted). Moreover, as pertinent here, the Equal Protection clause protect males as well as females against sex discrimination by state officials. *See Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 733 (1982) (holding that policy of excluding males from school of nursing violated the Equal Protection Clause).

Here, the Court finds that the §1983 claim against the individual officers for violations of the Fourth and Fourteenth Amendments satisfies the pleading requirements. The First Claim for Relief sets forth the facts and circumstances surrounding Plaintiff's arrest on October 19, 2008, and alleges that the arrest violated Plaintiff's Fourth and Fourteenth Amendment rights in the following ways: 1) by arresting Plaintiff without probable cause; 2) arresting him for a crime he could not have committed against the minor son of Plaintiff's girlfriend (because the minor son was not a person covered by § 273.5); 3) arresting him solely on the basis of his gender (male) and doing so with discriminatory intent. FAC ¶ 15. Plaintiff further alleges that the Defendants violated Plaintiff's constitutional rights by applying for a stay away order, which compelled him to stay away from his home and by wrongfully reporting Plaintiff to Child Protective Services as a suspect for child abuse. FAC ¶16. Plaintiff alleges that all of these acts were committed by Defendants with malice "evil motive or intent" or with "reckless/callous disregard of and indifference to Plaintiff's protected rights and well-being." FAC ¶ 19. Plaintiff alleges that these wrongful acts caused him damage. FAC ¶ 18. These allegations are sufficient for the liberal pleading requirements and are sufficient to place Defendants on notice of the wrongful conduct they are alleged to have committed.

The Court agrees with Defendants, however, that the first claim for relief does contain certain allegations that fail to state a claim. As part of the first claim, Plaintiff alleges that the Defendants "defamed" him. FAC ¶16. Plaintiff concludes that "[a]ll such wrongful acts defamed Mr. Buckheit." *Id.* This aspect of the First Claim under §1983 is deficient. As a general rule, a

7

violation of state law does not lead to liability under §1983.  *See Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1988); *see also, Doe v. Connecticut Dept. Of Child & Youth Services*, 911 F.2d 868, 869 (2nd Cir. 1990) ("A violation of state law neither gives plaintiffs a §1983 claim nor deprives defendants of the defense of qualified immunity to a proper §1983 claim.").  Moreover, section 1983 does not impose liability for violations of duties of care arising out of state tort law.  *See DeShaney v. Winnebago County Social Servs. Dep't*, 489 U.S. 189, 201-03 (1989); *Baker v. McCollan*, 443 U.S. 137, 146 (1979) (without more no action for false imprisonment).

Accordingly, the allegations in the First Claim for Relief alleging defamation are stricken.  Otherwise, the Motions to Dismiss are DENIED on the First Claim.

### 2. Second Claim – Municipal Liability (Defendants Town of Atherton and San Mateo County)

Defendants argue that the First Amended Complaint fails to allege facts that establish some affirmative link between the Town of Atherton's and the County's policies and the deprivation of Mr. Buckheit's constitutional rights.  Defendants contend that Plaintiffs have pled, in effect, a *respondeat superior* theory of liability, which is insufficient to establish a claim against a municipality.  The Court disagrees with respect to the Town of Atherton, but agrees with respect to the County.

A municipality can be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the constitutional violation at issue; *respondeat superior* or vicarious liability will not attach under section 1983.  *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Plaintiffs must allege that: (1) Mr. Buckheit was deprived of his constitutional rights by Town of Atherton and the County employees acting under color of State law; (2) that the Town of Atherton and County had customs or policies which "'amounted to deliberate indifference' to [his] constitutional rights;" and (3) that these policies were the "'moving force behind the constitutional violation[s].'" *Oviatt v. Pearce*, 954 F.2d 1470, 1473, 1477 (9th Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)) (alterations in original).  Further, acquiescence in a practice or custom is a cognizable claim under *Monell. Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).  A municipality's failure to train or supervise its employees properly can create section 1983 liability

where such a failure is "conscious" or "amounts to deliberate indifference to the rights of persons" with whom its employees are likely to come into contact. *City of Canton*, 489 U.S. at 388-89.

In the Ninth Circuit, a claim of municipal liability is sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (quoting *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir.1988) (quoting *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir.1986))).

Plaintiffs' First Amended Complaint is sufficient as to the Town of Atherton, but insufficient as to the County of San Mateo. It alleges that (1) Mr. Buckheit was deprived his constitutional rights; (2) the town of Atherton and San Mateo County both maintained "a policy" "longstanding practice or custom" to discriminate against males with respect to the investigation of domestic violence cases; (3) policymakers "knew of and specifically approved of Defendants Dennis, DeVlugt, and Kockler , and Does 1-250's wrongful acts or omissions"; (4) The town of Atherton and San Mateo County's  policies and practices permitted and encouraged gender discrimination and unlawful arrests by its officers; (5) the town of Atherton and San Mateo County's "training was improper, inadequate, wrongful, and unreasonable, resulting in the unlawful and discriminatory application of legal authority, including wrongful arrests and false reporting of crimes against innocent citizens" and finally, (6) the town of Atherton and the County of San Mateo's policymakers "continued to deprive [Buckheit] of his civil rights, including the right to have access to the court system and the legal process, by denying him access (or obstructing his access) to documents, evidence, or information which he was entitled to receive or obtain, such as the police report and other reports made against him. . . ." FAC ¶¶ 22-26. These allegations are sufficient to state a claim against the Town of Atherton.

However, the Court finds that the allegations of the Complaint are insufficient to state a claim against the County. There is no dispute that the Defendant Officers in this case are not employed by the County. Plaintiff argued at the hearing that the County of San Mateo promulgated a policy for all "subdivisions" within the County to follow with respect to the training of officers handling domestic violence disputes, and that some training under this policy was handled by the

9

1 District Attorney's Office.  The Complaint fails to allege facts that relate to this "policy" or how this
2 policy in any way means that the County is responsible for the conduct of the Town of Atherton's
3 police officers.

4 The Motion to dismiss this claim as to the Town of Atherton is DENIED.  The County's
5 Motion to dismiss this claim, however, is GRANTED WITH LEAVE TO AMEND.

### 3. Third Claim – § 1983 Claim, First Amendment (all Defendants)

Plaintiff's third claim against all Defendants under 42 U.S.C. § 1983 is for violating his First Amendment rights of freedom of expression.  The First Amendment states:  "Congress shall make no law respecting ... the right of the people ... to petition the Government for a redress of grievances."  The right to petition "is implicit in '[t]he very idea of government, republican in form.'" *McDonald v. Smith*, 472 U.S. 479, 482 (1985) (quoting *United States v. Cruikshank*, 92 U.S. 542, 552, 23 L.Ed. 588 (1876)).  The right to petition extends to all departments of the government.  "The right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

To prevail on a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (citing *Mendocino Environment Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir.1999).  However, "[a] plaintiff may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives." *Mendocino Environment Center v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994).

The Town asserts that the First Amendment Claim should be dismissed because the alleged retaliatory actions were not in response to Plaintiff's efforts to petition the government for redress of his grievances.  Town Motion at 11.  The Town argues, "the arrest and all subsequent related acts were all standard, sound investigative procedures related to preventative measures against domestic violence.  None of these matters has anything do with the professed disapproval by Town Defendants of Plaintiff's exercise of free speech or his right to petition the government." *Id.*  While

the evidence may ultimately support the Town's argument, it cannot be raised on a 12(b)(6) motion. The Complaint alleges that the Officers applied for a stay away order and reported Plaintiff to Child Protective Services. Plaintiff alleges that all such wrongful acts were done with the motive to retaliate against him and were the proximate cause of injury and damages. FAC ¶¶ 32-35.

The Court concludes that these allegations satisfy the pleading requirements with respect to the Town of Atherton because there are specific allegations regarding the Town and Officer Defendants' conduct, *e.g.*, the Officer Defendants' alleged reports to CPS and application of a stay away order, and how this conduct supports a claim of retaliation. Defendant Town of Atherton's Motion to Dismiss the First Amendment retaliation claim is therefore DENIED.

This claim fails as to the County, however. The allegations with respect to the County are conclusory and vague. *See* FAC ¶ 34. Unlike the allegations against the Town based on the specific conduct of its Officers, the allegations against the County contain no specifics about what the County did. Defendant San Mateo County's Motion to Dismiss this claim is GRANTED WITH LEAVE TO AMEND.

### 4. Fourth Claim – Conspiracy to Violate Civil Rights, 42 U.S.C. § 1985 (all Defendants)

42 U.S.C. § 1985(3) prohibits conspiracies to violate a person's civil rights. To survive a motion to dismiss, the plaintiff must plead specific facts to support the existence of the alleged conspiracy. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989). Vague and conclusory allegations of a conspiracy are insufficient to state a claim. *See Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 626 (9th Cir.1988) ("A claim under [section 1985] must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient .").

Defendants argue that the claim for conspiracy fails to allege specific facts that could support a finding of liability under § 1985. The Court agrees. The allegations of conspiracy include the following: "Defendants and each of them, entered into a conspiracy with the unlawful object of depriving, directly or indirectly, Plaintiff Jonathan Buckheit of the equal protection of the law. . ." FAC ¶ 39. The Complaint then lists the acts of Defendants that violated Plaintiff's rights, including the false reporting to Child Protective Services, wrongful arrest, and failure to provide access to

11

documents (the police report). *Id.* ¶ 39-40. Although, as the Court has found previously, the factual allegations of wrongdoing are sufficient, the Court finds that this claim lacks any factual allegations of how the Defendants conspired together to commit these wrongful acts. This claim therefore fails to satisfy the pleading standard set forth above. *See Karim-Parahi, supra.* The conspiracy claim is DISMISSED WITH LEAVE TO AMEND.

### 5. Fifth Claim – False Arrest and Imprisonment & Denial of State Constitutional Rights (all Defendants)

The Fifth Claim for relief entitled "False Imprisonment & Denial of State Civil Rights – Ancillary or Supplemental State Claims Against All Defendants." This claim is derivative of the federal claims discussed above. However, the Court finds that the claim lacks any factual allegations in support of specific state law claims. It is vague and conclusory and does not place Defendants on notice of what state laws they are alleged to have violated. The claim fails to meet minimum pleading requirements and is therefore DISMISSED WITH LEAVE TO AMEND.

### D. Absolute Immunity Under California Government Code § 821.6.

The Town and Officer Defendants argue that they are absolutely immune from suit (and presumably this argument applies to all claims; Defendants do not specify in their motion) under California Government Code § 821.6. Defendants are incorrect.

California Government Code § 821.6 states "a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Defendant cites numerous cases, all of which address the applicability of § 821.6 as it applies to *state claims*. *See e.g., Lambert v. City of Santa Rosa*, 2005 U.S. Dist. LEXIS 30858 (N. D. Cal., Nov. 15, 2005) (holding that § 821.6 bars Plaintiff's state claim for intentional infliction of emotional distress). Defendants cite no case, and the Court can find none, that stands for the proposition that state law immunities apply to *federal* civil rights claims. Indeed, the law is to the contrary. State law immunities do not apply to federal constitutional claims. *See Rutledge v. County of Sonoma*, 2009 WL 3075596 *6 (N.D. Cal, Sep. 22, 2009) (citing *Asgari v. City of Los Angeles*, 15, Cal. 4th 744, 758 n. 11 (1997). Defendants' absolute state immunity argument is misplaced.

Defendants' immunity argument is only potentially applicable with respect to the Fifth Claim for relief, which contains purely state law claims. However, as currently pled, the Court cannot ascertain which state claims are asserted in the Fifth Claim for relief. As explained above, this claim is dismissed with leave to amend.[5] Keeping these principles in mind, Defendants' argument based upon absolute immunity under § 821.6 may be raised in a future motion to dismiss or on summary judgment. It is DENIED without prejudice.

### E. Absolute Immunity Under California Penal Code § 11172

The Town Defendants also argue (for the first time in their reply brief) that they are absolutely immune from suit arising out of the claim that the Officers violated Plaintiff's constitutional rights by reporting him to Child Protective Services.

Under California Penal Code § 11172, reporters of suspected child abuse are absolutely immune from suit for damages based upon any reporting of an incident of child abuse. Town Reply at 6. The statute distinguishes between "mandatory reporters" and "voluntary reporters." Cal. Penal Code § 11172(a) (2009). "Mandated reporters" are provided absolute civil and criminal immunity for reports of abuse and neglect. *Id*. "Voluntary reporters" are immune from civil and criminal liability "unless it can be proven that a false report was made and the person knew that the report was false or was made with reckless disregard of the truth of falsity of the report." *Id.* The Defendants argue that the statute provides that "peace officers" are mandatory reporters under California Penal Code § 11165.7(19) and that Section 11165.7(34) lists "[a]ny employee of a police department" as a mandatory reporter as well. Because the Town Defendants are mandatory reporters of suspected child abuse under state law, Defendants argue, they are absolutely immune from both state and federal claims. With respect to the federal constitutional claims, the Court disagrees.

In support of their argument that state immunity applies to federal § 1983 claims, Defendants rely primarily on state case law. For example, Defendants urge this Court to adopt the reasoning of *Thomas v. Chadwick*, 224 Cal.App.3d 813 (1990) ("state law defenses may be asserted against section 1983 claims, even though they end up defeating the federal claim, if such defenses are not

---

[5]The Court cautions Plaintiff to be mindful of § 821.6 when amending this claim for relief. However, § 821.6 "does not apply . . . to false arrest or false imprisonment claims where the employee 'knowingly imprison[s] a person without proper legal authority." *Rutledge*, at *6 (citing *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 720 (1974).

13

inconsistent with the intent and purpose of the federal law.") Town Reply at 6. The Court declines to do because it is bound by the law of the Ninth Circuit, which is clear that "[i]mmunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations." *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 1999). In *Wallis*, the Ninth Circuit reversed a district court that had applied state statutory immunities for child abuse investigations to the federal § 1983 constitutional claims. *Id.* (citing *Martinez v. California*, 444 U.S. 277, 284, n. 8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law") and *Good v. Dauphin County Social Serv.*, 891 F.2d 1087, 1090-91 (3d Cir. 1989) (state laws providing immunity from suit for child abuse investigators have no application to suits under § 1983)). Although as one district court has noted "it is unclear from the court's opinion in *Wallis* which state statutory immunities were at issue in the child abuse investigations, this court is bound by the Ninth Circuit, and in the face of such explicit admonition, this court cannot dismiss the federal claims against [defendant] based on state law." *John Doe v. Regents of the Univ. of Calif.*, 2006 WL 2506670 * 5 (E.D. Cal. Aug. 29, 2006). In *John Doe*, Judge Karlton explained: "While this court is mindful of the California appellate court's reasoning in *Chadwick*, until Congress explicitly states that a state statute may provide immunity for § 1983 claims, the court declines to follow *Chadwick* because it contravenes Ninth Circuit authority." *John Doe*, 2006 WL 2506670 at *6. This Court agrees with Judge Karlton's reasoning, and concludes that it is bound by the Ninth Circuit with respect to whether state law immunities apply to federal constitutional claims, including in the context of mandatory reporters of suspected child abuse. *See also, Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law."); *Romstad v. Contra Costa County*, 41 Fed.Appx. 43, 46 (9th Cir. 2002) ("The district court erred in applying California Government Code § 820.2, a state immunity statute, to the Romstads' federal claims.") (citing *Wallis v. Spencer,* 202 F.3d 1126, 1144 (9th Cir. 2000)) [6]

In support of their argument, the Town Defendants cite to one opinion of the Ninth Circuit and several district court opinions that might suggest that state immunities relating to child abuse

---

[6] It does appear, however, that this state immunity would apply to any state claims against Defendants related to the reporting of Plaintiff to Child Protective Services. When amending the state claim, Plaintiff should be mindful of this and any other applicable state law immunities.

14

investigations apply to federal constitutional claims.  The Court is not persuaded by these authorities.  The Ninth Circuit case cited by Defendants in their reply, *Woodrum v. Woodward County*, 866 F.2d 1121, 1127 (9th Cir. 1989), does not hold that immunity applies to a federal claim.  After dismissing the plaintiff's claims for failure to state a claim under § 1983, the court noted that the mother's reports of child abuse "are entitled to immunity under Cal. Welf. & Inst. Code § 306."  *Id.* at 1127 (citing *Holt v. Castaneda*, 832 F.2d 123, 125-26 (9th Cir. 1987).  The court in *Woodrum* then includes a "see also" citation to California Penal Code § 11172, without further explanation.  *Id.*  The court concluded that "[the mother's] filing of the custody petition is entitled to absolute immunity."  *Id.*  The court explained: "Therefore, we affirm the district court's dismissal of the action against [the mother of the child] both for failure to state a claim and because [the mother's] other actions are entitled to immunity."  *Id.*  It is not entirely clear whether the Ninth Circuit in *Woodrum* applied state law immunities to the § 1983 claim, or whether it was suggesting that the immunity applied to allegations that the court had already ruled were "primarily allegations of defamation under state law."  *Id.*  In light of the Ninth Circuit's clear holding in a subsequent case, *Wallis, supra*, the Court declines to accept Defendants' argument that *Woodrum* requires application of state law immunities to the federal constitutional claims at issue here.

Defendants also cite to a district court case, *Watson v. County of Santa Clara*, 468 F.Supp.2d 1150 (N.D. Cal. Jan. 3 2007).  There, the plaintiff alleged statutory violations arising out of the mandatory reporting statute, Cal. Penal Code § 11172, alleging that defendants had filed a false report of child abuse.  *Id.*  The complaint included other state claims, such as a claim for intentional infliction of emotional distress, a federal claim under the Americans with Disabilities Act, and a claim for violation of § 1983 entitled "Civil Conspiracy – Oppressive Governmental Conduct Deprivation of Substantive Due Process Rights."  *Id.* at 1153-54.  Judge Whyte dismissed the complaint with leave to amend, finding § 11172 immunity applicable to the statutory violations alleged in the Complaint.  *Id.* at 1161.  The court explained that it was not clear from the face of the complaint whether the school district defendants were "mandatory reporters" and thus protected by the absolute immunity for mandated reporters of suspected child abuse.  *Id*.  The court found that the immunity under § 11172 is not an affirmative defense to be pleaded by the defense; rather, the burden is on the plaintiff to plead facts establishing that the state immunity does *not* apply.  *Id*. at

15

1157. The court did not discuss the applicability of § 11172 immunity to federal civil rights claims.[7]

The Court declines to apply the absolute immunity found in § 11172 to shield Defendants from liability for the federal constitutional claims.

### F.     Qualified Immunity

The Town Defendants assert that even if they are not entitled to dismissal of all claims under California Government Code § 821.6 and California Penal Code § 11172, they are entitled to qualified immunity on all claims in the Complaint because the officers acted reasonably. Defendants argue that to the extent Plaintiff asserts that the officers mistakenly arrested Plaintiff as the aggressor instead of his girlfriend, the officers are entitled to qualified immunity because such a mistake of fact was objectively reasonable under the circumstances. The Court disagrees.

#### 1.     Standard Governing Qualified Immunity

Under the doctrine of qualified immunity, even if a constitutional violation occurred, governmental officials are immune if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity, courts must first ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If not, the qualified immunity analysis ends here. *Id.* at 201. On the other hand, "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.*[8]

The inquiry as to this second question must be "particularized." *Id*. It is not enough that the general rule is established. *Id*. Rather, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id*. at 202 (emphasis added). The Supreme Court has

---

[7] It is noteworthy that in *Watson*, it appears that the § 1983 claim was based upon violations of state statutory rights. Again, the court did not discuss the § 1983 claims at all, nor did it address, in particular, whether § 11172 immunity applies to federal claims.

[8] In *Pearson v. Callahan*, the Supreme Court clarified that the order of the two-step inquiry is not mandatory. Rather, courts should "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." --- U.S. ---, 129 S. Ct. 808, 818 (2009).

16

1  cautioned that courts should afford "deference to the judgment of reasonable officers on the scene"
2  and should not use "20/20 hindsight vision." *Id.* at 205.  Thus, "[e]ven law enforcement officials
3  who 'reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'"
4  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).

Where a plaintiff asserts a Fourth Amendment violation based on the absence of probable cause, the relevant inquiry with respect to the "clearly established" prong of the qualified immunity analysis is "whether a 'reasonable officer could have believed that probable cause existed to arrest the plaintiff.'" *Sorgen v. City and County of San Francisco*, 2006 WL 2583683 (N.D. Cal. Sept. 7, 2006) (quoting *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002)).

Where a plaintiff asserts a claim of intentional gender discrimination, the relevant question is whether a reasonable officer "in defendant's position at the relevant time would know that subjecting plaintiff to the treatment alleged *because of* her membership in a protected class would violate the plaintiff's clearly established federal statutory or constitutional rights." *Oona R.-S. v. Santa Rosa City Schools*, 890 F.Supp. 1452, 1472 N.D. Cal. 1995) (citing *Lindsey,* 29 F.3d at 1384).

Where a plaintiff asserts a claim of retaliation under the First Amendment, the relevant question is whether reasonable officers in the Defendants' position would have known that it is unlawful to retaliate against someone for protected speech. *Mendocino Environment Center v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994).

The defense of qualified immunity may be raised in a motion under 12(b)(6).  In *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963-64 (9th Cir. 2004), the court explained that "in the usual case where a defendant asserts an official immunity defense, the district court first decides whether the facts alleged in the complaint, assumed to be true, yield the conclusion that the defendant is entitled to immunity."  As the court in *Butler* noted, "[t]his is the analysis under Rule 12(b)(6) on a motion to dismiss." *Id.* at 964; *see also Wong v. INS*, 373 F.3d 952, 957 (9th Cir. 2004) (noting that officials may "raise the qualified immunity defense immediately, on a motion to dismiss the complaint, to protect against the burdens of discovery").

### 2. Application of Standard to Facts

As discussed above, the Court finds that Plaintiff's facts, if proven true, would establish constitutional violations under the Fourth Amendment on the basis of Plaintiff's arrest without

1 probable cause and for violations of gender discrimination under the Equal Protection clause of the
2 Fourteenth Amendment. The allegations of the Complaint also state a claim for retaliation under the
3 First Amendment. The next question for the Court is whether the rights violated were clearly
4 established at the time Defendants acted. *Saucier*, 533 U.S. at 201. In determining whether the
5 rights were clearly established, the Court must analyze whether Defendants could have reasonably
6 believed their conduct did not violate a clearly established law. *Id.* at 202.

7 With respect to Plaintiff's unlawful arrest, the Fourth Amendment right to be free from arrest
8 without probable cause is clearly established. *See Sokolow*, 490 U.S. at 7. Plaintiff called 911
9 seeking the aid of the Atherton Police Department and, accepting Plaintiff's version of events as true
10 on a motion to dismiss, there was no probable cause to arrest Plaintiff because he was the one with
11 injuries and because he could not have violated § 273.5 against Plaintiff's girlfriend's minor son as a
12 matter of law. *See* Cal. Penal Code § 273.5 (providing specific protection for a limited group of
13 victims: the spouse, former spouse, co-habitant, or the other parent of the defendant's child); *People*
14 *v. Taylor*, 118 Cal. App.4th 11, 18-19 (2004). In such circumstances, Plaintiff alleges, a reasonable
15 officer could not have concluded that there was probable cause to arrest Plaintiff for violating §
16 273.5 against Plaintiff's girlfriend's minor son.

17 Further, whether Plaintiff was arrested for any crime absent probable cause or on account of
18 discriminatory intent depends upon facts that involve subjective intent. For purposes of this motion,
19 the allegations of the Complaint are accepted as true. Here, Plaintiff alleges that the Defendants
20 harbored ill intent and intentionally discriminated against him by arresting him on account of his
21 gender.[9] As the Ninth Circuit explained in a similar context: "[T]he proper threshold question is
22 whether a reasonable official in [Defendant's] position in 1988 would know that subjecting
23 [Plaintiff] to adverse employment actions because of her gender would violate [Plaintiff's] clearly
24 established federal statutory or constitutional rights." *Lindsey v. Shalmy,*1382, 1385 (9th Cir. 1994)
25 (citations omitted). Because the allegations of the Complaint with respect to gender discrimination
26 involve the subjective intent of the officers, and those allegations are accepted as true at this stage of

---

[9]The Court notes that ultimately Plaintiff will be required to present much more than the current allegations of discriminatory intent in order to survive a motion for summary judgment. "Mere conclusory allegations of discriminatory intent, embodied in affidavits or deposition testimony, cannot be sufficient to avert summary judgment. The court must satisfy itself that there is sufficient 'direct or circumstantial evidence' of intent to create a genuine issue of fact for the jury, before it can deny summary judgment on the ground of immunity." *Lindsey v. Shalmy*, 29 F.3d at 1385.

18

the proceedings, the Court finds that a finding of qualified immunity is premature. *Id.* This issue, however, may be raised again on a motion for summary judgment.

The Court concludes that the allegations of discriminatory intent are sufficient, at least at this stage in the proceedings, to defeat a defense of qualified immunity. In addition, the Court concludes that the right to be free from gender discrimination was clearly established at the time of the events in this case. *See Lindsey, supra* at 1386 ("Well prior to 1988 the protection afforded under the Equal Protection Clause was held to proscribe any purposeful discrimination by state actors, be it in the workplace *or elsewhere,* directed at an individual solely because of the individual's membership in a protected class.") (citation omitted) (emphasis added). The Equal Protection Clause of the Fourteenth Amendment confers a "federal constitutional right to be free from gender discrimination" at the hands of governmental actors." *Davis v. Passman*, 442 U.S. 228, 234-35 (1979). The right to be free from gender discrimination was clearly established long before 2008 when the events giving rise to the present dispute occurred. *See Estate of Maria Teresa Macias v. Ihde,* 219 F.3d 1018, 1007 (9th Cir. 2000).

With respect to Plaintiff's First Amendment claim, the right to be free from retaliation for exercising one's First Amendment right to redress grievances with the government was clearly established at the time of the events in this case. The right to be free from retaliation by government actors was well established in 2008. *See e.g., Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2007).

Accordingly, the motions to dismiss on the issue of qualified immunity from the Fourth, Fourteenth and First Amendment claims are also DENIED WITHOUT PREJUDICE.

### F. Claim Preclusion – Collateral Estoppel

The County also argues that Plaintiff is precluded from pursuing his claims that "the County deprived him of his civil rights by denying or obstructing access to documents, evidence or information" under the doctrine of collateral estoppel or claim preclusion based upon the Petition for Writ of Mandate filed by Plaintiff in San Mateo County Superior Court. County Motion at 8. The Court concludes that the parties have not adequately briefed this issue and the Court declines to address it at this time. The issue may be raised again on summary judgment.

**IV. CONCLUSION**

For the foregoing reasons, the Defendants' Motions to Dismiss are GRANTED IN PART AND DENIED IN PART.  Plaintiff shall have thirty (30) days from the date of this order to file a Second Amended Complaint consistent with this Order.

IT IS SO ORDERED.

Dated: May 18, 2010

JOSEPH C. SPERO
United States Magistrate Judge