UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN B. BUCKHEIT,<br><br>Plaintiff(s),<br><br>v.<br><br>TONY DENNIS, ET AL.,<br><br>Defendant(s). | Case No. C 09-5000 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SAN MATEO COUNTY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br>**[Docket No. 55]** |

## I. INTRODUCTION

Plaintiff Jonathan Buckheit (hereafter "Plaintiff") filed this action, alleging federal and state law claims arising out of his arrest and imprisonment resulting from a domestic dispute at his home. Defendants are the Town of Atherton and Officers Tony Dennis, Dean DeVlugt, and Anthony Kockler (hereafter "Town" and "Officer Defendants") and Defendant County of San Mateo (hereafter "County").[1] The Defendants filed separate Motions to Dismiss the First Amended Complaint in its entirety. The Court granted in part and denied in part Defendants' motions on May 18, 2010. On July 6, 2010, Plaintiff filed a Second Amended Complaint. *See* Docket No. 53. The County has filed the present Motion to Dismiss the Second Amended Complaint. *See* Docket No. 55. A hearing was held on September 3, 2010 at 9:30 a.m., at which counsel for the parties appeared.

The Court has reviewed the papers submitted and the arguments of counsel at the hearing. For the reasons explained below, the Court GRANTS IN PART AND DENIES IN PART the County's Motion to Dismiss.

---

[1] The parties have consented to the jurisdiction of this Court.

## II. BACKGROUND[2]

### A. Factual Background

On the night of October 19, 2008, Plaintiff Jonathan Buckheit was at home located at 34 Selby Lane, Atherton in San Mateo County, California. Second Amended Complaint ("SAC") ¶10. Plaintiff telephoned "911" and sought the aid of the Atherton Police Department regarding a dispute with his then girlfriend/housemate. *Id.* ¶11. Defendants Tony Dennis, Dean DeVlugt and Anthony Kockler were, at all relevant times, police officers employed by the Town of Atherton Police Department. *Id.* ¶¶ 5-7. Officers Dennis and DeVlugt reported to Plaintiff's home in response to the call. *Id*. ¶12. After conducting an investigation, Defendants arrested Plaintiff for violating California Penal Code Section 273.5 against both his girlfriend and her minor son (willfully inflicting on a spouse or co-habitant corporal injury resulting in a traumatic condition). *Id.* ¶13. According to Plaintiff, "[t]he arrest was wrongful, without probable cause, and in violation of Mr. Buckheit's 4th and 14th Amendment rights. The arrest and related recommendation for criminal prosecution were made solely or primarily on the basis of Mr. Buckheit's gender (a male) and for illegal discriminatory purposes." *Id*. ¶14. Plaintiff posted bail and was released from the San Mateo County Jail on October 20, 2008. *Id.* In addition, Plaintiff alleges that his arrest was without probable cause in that "as a matter of law, [Plaintiff] could not have committed the crime for which he was arrested, violating California Penal Code § 273.5 as applied to his housemate's son. Furthermore, there was not probable cause that Plaintiff had committed a violation of California Penal Code § 273.5 even as against his housemate." *Id.* at ¶15.

On January 12, 2010, the San Mateo County Superior Court granted Plaintiff's application for a finding of factual innocence. *Id*. ¶16.

### B. Procedural History

Plaintiff filed his first Complaint on October 20, 2009. Thereafter, on January 5, 2010, Defendant County of San Mateo filed a motion to dismiss. Rather than oppose the motion, Plaintiff filed his First Amended Complaint on January 25, 2010, which added Defendant Kockler and added a claim for retaliation under the First Amendment. The Town Defendants and County filed separate

---

[2] The Court accepts all well-pled factual allegations of the complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996).

2

motions to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court granted in part and denied in part those motions on May 18, 2010. The Second Amended Complaint was filed on June 18, 2010 and the County filed the present motion to dismiss the Second Amended Complaint on July 6, 2010.

In the Third Claim of the SAC specifically against the County, Plaintiff alleges that the County of San Mateo violated his civil rights in that

> there existed an agreement (oral and/or written), expressed or implied, between Defendant Town of Atherton and Defendant County of San Mateo providing that the County of San Mateo would expressly create, promulgate, adopt and/or implement an official policy that intentionally and illegally discriminated against adult males in the law enforcement investigation of domestic disputes so that adult males are much more likely to be arrested and prosecuted, regardless of the true circumstances or facts and that Defendant Town of Atherton would instruct or require its police officers. . . to follow, implement execute or carry out San Mateo County's discriminatory policy.

SAC, ¶30. Plaintiff alleges that the County expressly created and adopted such an official policy, which the Town of Atherton required its offers to implement. *Id.* ¶31. Plaintiff also alleges that the County had control and authority of Atherton Police Officers Dennis, DeVLugt, and Kockler "in their actions and arrest of Plaintiff on October 19, 2008" and that the County's discriminatory policies were "one of the moving forces behind Defendants Dennis, DeVlugt, and Kockler's misconduct." *Id.* ¶32.

In the Fourth Claim for Relief, Plaintiff alleges that the County and the Town of Atherton had an agreement whereby the County would provide Atherton with training of its police officers (including the named Defendant Officers here) in the investigation of domestic disputes. *Id.* ¶38. Further, Plaintiff alleges that "[t]hrough the training and the Town of Atherton's requirement that its police officers follow or act on the training, Defendant County of San Mateo had control or authority over [the Defendant Officers] in their investigation and arrest of Plaintiff on October 19, 2008." *Id.* ¶39. Plaintiff alleges that this inadequate training proximately caused the Officers to discriminate against adults males in the performance of their duties as they relate to domestic disputes so that adult males are more likely to be arrested regardless of the facts or circumstances of the case. *Id*. ¶¶ 40-41.

In the Seventh Claim for Relief, Plaintiff alleges that the County failed to provide him with copies of the police report in his case, despite his requests and the County's legal obligation under

3

state law to provide them. *Id*. ¶¶60-62. In so doing, Plaintiff alleges that the County and Town of Atherton interfered with or obstructed Plaintiff's First Amendment rights to petition the government to seek redress of his grievances. *Id*. ¶63. Plaintiff also alleges that the Defendants Town of Atherton and County retaliated against him for exercising his First Amendment rights to seek redress against the government. *Id.*

In the Eighth Claim, Plaintiff alleges that the Defendants conspired to violate the above-mentioned civil rights by conspiring to "deny Plaintiff's petition without regard to the merits of his petition [for a determination of factual innocence] and for the purpose of retaliating against Plaintiff for petitioning the government to seek a redress of his grievances. . . ." *Id*. ¶73.

The Ninth Claim is brought pursuant to 42 U.S.C. §1983 for "breaching *Brady* duties" against the County of San Mateo based upon the County's intentional violation of its legal duty to provide Plaintiff with favorable evidence during the factual innocence proceedings. *Id.* ¶82.

The Eleventh Claim is for declaratory relief against both the Town of Atherton and the County. Plaintiff seeks a declaration of Plaintiff's and Defendant's rights and obligations as to the constitutionality, propriety or legally [sic] of Atherton's and the County's training, policy, or practice/custom in the investigation of domestic violence cases and the disclosure of the requested information regarding the falsification of the police report." *Id.* ¶111.

### C. The County's Motion

The County moves to dismiss all claims against it on the ground that the Second Amended Complaint fails to state a claim with respect to the County for violating 42 U.S.C. §1983 and §1985 because the County of San Mateo has no connection with the arrest or subsequent actions taken by the Atherton police officers. It asserts that Plaintiff has alleged no facts demonstrating that the County had any control over the Atherton Police Officers sufficient to establish liability on the part of the County.

In particular, the County argues first that Plaintiff's Third Claim for Relief under 42 U.S.C. § 1983 fails to plead facts that demonstrate that the County had any control over the Town or Officer Defendants. Second, the County argues that the Fourth Claim fails because the alleged constitutional violations were not the result of any County training or failure to train the Officer Defendants and further, that the County had no control or authority over the Town Defendants.

4

1  Third, the County argues that the Seventh Claim for retaliation fails because he fails to allege any
2  constitutional injury resulting from the County's alleged failure to deprive him of his police report.
3  Fourth, the County argues that the Eighth Claim for Relief regarding the County's opposition to his
4  petition for factual innocence fails because: a) plaintiff has failed to plead a conspiracy, b) the court
5  granted the petition for factual innocence and therefore Plaintiff has suffered no constitutional
6  injury, and c) the San Mateo County District Attorney acted as an agent of the state when opposing
7  the petition and is therefore immune from suit. Fifth, the County argues that the Plaintiff's Ninth
8  Claim for due process violations based upon *Brady v. Maryland*, fails because he has not alleged that
9  he suffered any prejudice as a result of the alleged violation. Finally, the County argues that the
10 Eleventh Claim for relief fails because it seeks declaratory relief based upon substantive claims that
11 are without merit.

**III.  ANALYSIS**

    **A.  Legal Standard – Motion to Dismiss**

Under Fed.R.Civ.P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). (internal quotation and modification omitted). To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id*. at 1949-50.

A complaint may be dismissed for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. 544 (*quoting Car Carriers, Incl v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984) (internal quotations omitted; emphasis in original). Together, *Iqbal* and *Twombly* represent "a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these

allegations, taken as true and construed in the light most favorable to the plaintiff, 'plausibly give rise to an entitlement to relief.'" *Fallcochia v. Saxon Mortg.*, 2010 WL 582059 (E.D. Cal. Feb. 12, 2010) (citing *Ashcroft v. Iqbal* 129 S.Ct. at 1950); *Erickson v. Pardus*, 551 U.S. 89 (2007). "Plausibility," as used in *Twombly* and *Iqbal*, refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). If allegations in a complaint are "no more than conclusions," then they are not "entitled to the assumption of truth." *Id.*

A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### B. Application of the Law to the Facts of the Case

The County moves to dismiss all claims against it (Claims 3, 4, 7, 8, 9 and 11) on the ground of failure to state a claim. Each claim will be addressed below.

#### 1. The Third and Fourth Claims – 42 U.S.C. § 1983

In the third and fourth claims for relief, the Plaintiff alleges that the Town of Atherton agreed to carry out a discriminatory policy of the County (claim three) and that the County agreed to provide training to the Town of Atherton's officers (claim four), and that this establishes liability on the part of the County because these policies and training caused the individual officer Defendants to violate Plaintiff's constitutional rights. The County argues that the third and fourth claims under 42 U.S.C. §1983 fail to state a claim because Plaintiff has not alleged that the County had sufficient control over the other Defendants sufficient to establish liability on the part of the County.

Although a close question, the Court finds that the Complaint contains some factual allegations that are sufficient to allow the Third and Fourth Claims to proceed past the pleading stage.

As a threshold matter, the Court addresses *Monell* liability and whether the principles of *Monell* have any applicability here. A municipality can be found liable under 42 U.S.C. §1983 only

where the municipality itself causes the constitutional violation at issue; *respondeat superior* or vicarious liability will not attach under section 1983. *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs must allege that: (1) Mr. Buckheit was deprived of his constitutional rights by County employees acting under color of State law; (2) the County had customs or policies which "'amounted to deliberate indifference' to [his] constitutional rights;" and that (3) these policies were the "'moving force behind the constitutional violation[s].'" *Oviatt v. Pearce*, 954 F.2d 1470, 1473, 1477 (9th Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)) (alterations in original). Further, acquiescence in a practice or custom is a cognizable claim under *Monell*. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

A municipality's failure to train or supervise its employees properly can create section 1983 liability where such a failure is "conscious" or "amounts to deliberate indifference to the rights of persons" with whom its employees are likely to come into contact. *City of Canton*, 489 U.S. at 388-89. The inadequate training must have actually caused the constitutional injury. *Id.* "That happens when the municipality makes a deliberate, conscious choice, and the resulting deficient training has a direct, causal link to the deprivation of federal rights." *Gomez v. City of Fremont*, 2010 WL 2898313 at *13 (N.D. Cal. July 21, 2010) (citing *City of Canton*, at 388).

In the Ninth Circuit, a claim of municipal liability is sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (quoting *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir.1988) (quoting *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir.1986)).

Plaintiff cannot plead a *Monell* claim against the County. The arresting officers were not County employees. Plaintiff has not cited a single case that extends *Monell* liability to employees of *another* municipality.

Instead of pleading facts that would lend themselves to a traditional *Monell* analysis, *i.e.*, municipal policies carried out by municipal employees, the Plaintiff argues that the County can be held liable for the officer's actions based upon the Town's agreement to carry out the County's

discriminatory policies under a proximate causation analysis. Plaintiff argues that it was reasonably foreseeable that the Town of Atherton's Officers would commit the illegal acts, including arresting Plaintiff without probable cause and on account of his gender because the County provided training to the officer Defendants that was discriminatory and contrary to law. He alleges:

> there existed an agreement (oral and/or written), expressed or implied, between Defendant Town of Atherton and Defendant County of San Mateo providing that the County of San Mateo would expressly create, promulgate, adopt and/or implement an official policy that intentionally and illegally discriminated against adult males in the law enforcement investigation of domestic disputes so that adult males are much more likely to be arrested and prosecuted, regardless of the true circumstances or facts and that Defendant Town of Atherton would instruct or require its police officers. . . to follow, implement execute or carry out San Mateo County's discriminatory policy.

SAC, ¶30. Plaintiff alleges that the County expressly created and adopted such an official policy, which the Town of Atherton required its offers to implement. *Id.* ¶31. Plaintiff also alleges that the County had control and authority of Atherton Police Officers Dennis, DeVLugt, and Kockler "in their actions and arrest of Plaintiff on October 19, 2008" and that the County's discriminatory policies were "one of the moving forces behind Defendants Dennis, DeVlugt, and Kockler's misconduct." *Id.* ¶32.

In the Fourth Claim for relief, which uses similar language to that used in the Third Claim, Plaintiff alleges that the Town of Atherton and the County of San Mateo entered into an agreement whereby the County would provide training to the town of Atherton's police officers. SAC ¶39. "Through the training and the Town of Atherton's requirement that its police officers follow or act on the training, Defendant County of San Mateo had control or authority over Defendants Dennis, DeVlugt, and Kockler in their investigation and arrest of Plaintiff on October 19, 2008." *Id*.

In the absence of control over the arresting officers, the County must not be held liable for their conduct under §1983. *See Arnold v. IBM*, 673 F.2d 1350, 1356-57 (9th Cir. 1981) (§ 1983 action requiring that defendant's conduct proximately caused the deprivations of the plaintiffs' rights – in the absence of control, defendant not liable for acts alleged). Here, the allegations are that: 1) there was a written and/or oral agreement whereby the Town of Atherton agreed to follow an alleged discriminatory policy set by the County, and 2) the County agreed to train officers from the Town of Atherton. The County is alleged to have had control over the officers and to have been a moving

force behind their misconduct. Although a close question, the Court finds that these allegations are sufficient to state a claim.

In *Arnold*, the plaintiff had argued that IBM was liable for the plaintiff's arrest for theft of trade secrets made by a trade secrets Task Force because: 1) IBM was responsible for creating the task force, 2) there was an IBM employee on the task force, 3) IBM provided the information that led to the arrest of plaintiff, 4) the officers "relied heavily, perhaps exclusively, on IBM personnel in determining what information constituted trade secrets," 5) the district attorney relied upon IBM's attorneys to provide the witnesses for use before the grand jury, and 6) IBM supplied the task force with "buy money" to enable purchases from suspected thieves under surveillance, expense money, and rented an airplane that the task force used. *Id.* at 1357. The Ninth Circuit analyzed the issue of proximate cause and found that IBM was entitled to summary judgment on the issue of causation of the constitutional injuries suffered by plaintiff under §1983 because there was no evidence that IBM exerted any actual control over the task force or that "the Task Force was in any sense a mere conduit for carrying out IBM's will." *Id.*

Under this rubric, the Court finds that the allegations of the SAC to be extremely weak. There is no allegation that the County participated in Plaintiff's arrest. There is no allegation that the arresting officers were employed by the County. The allegations of the SAC make it clear that it is the Town of Atherton, not the County, which allegedly "required" Atherton's officers to implement a discriminatory policy.

However, the SAC also alleges that there was a contract (either oral or written) pursuant to which the Town of Atherton required its officers to carry out the County's training policies. Although the allegations that the County controlled the officers are sparse, and there are no allegations suggesting that the officers were "a mere conduit for carrying out [the County's] will" (*Arnold*, 637 F.2d at 1357), the facts alleged in the Third and Fourth Claims for relief must be accepted as true on a 12(b)(6). Plaintiff alleges that the Town of Atherton and the County of San Mateo entered into an agreement providing that the County would promulgate or adopt a discriminatory policy, and further agreed that the Town of Atherton would instruct or require its officers to carry out this allegedly discriminatory policy. SAC ¶30. And in the Fourth Claim, the Plaintiff alleges that County and the Town of Atherton entered into an agreement whereby the

1  Atherton police officers would be trained in the discriminatory policies of the County. SAC ¶40.
2  These allegations are sufficient at the pleading stage.
3      Accordingly, for the reasons stated above, the Court DENIES The County's motion to
4  dismiss the Third and Fourth Claims for Relief.

        **2.    Seventh Claim – Retaliation for Failure to Deprive Plaintiff of Police Report**

7      In the seventh claim for relief, Plaintiff alleges that his constitutional rights were violated
8  when the Town of Atherton and the County refused to immediately turn over a copy of his police
9  report. Specifically, Plaintiff alleges that in refusing to provide a copy of the police report,
10 Defendants "intentionally interfered with or obstructed Plaintiff's exercise of his First Amendment
11 rights to petition the government to seek redress for his grievances against the government." SAC
12 ¶63. The County moves to dismiss this claim on the ground that the claim fails to state a
13 constitutional injury sufficient to state a claim under §§1983 and 1985.[3] Although a close question,
14 the Court disagrees.
15     The County argues that Plaintiff's Seventh claim essentially amounts to a claim for violating
16 California state law -- The California Public Records Act. *See* Cal. Gov't. Code Section 6250 *et.*
17 *seq.* Because the law is well established that only violations of federal law may form the basis of a
18 section 1983 civil rights claim, the County argues that the Seventh Claim must be dismissed.
19     The Seventh Claim, however, contains a federal constitutional basis – the First Amendment.
20 Although the Court finds this claim to be very weak, it does allege facts that could support a civil
21 rights violation for retaliation under the First Amendment. In the SAC, Plaintiff alleges that the
22 Defendants did not provide him with a copy of the police report in his case until after he had filed a
23 petition in state court and that the Defendants' actions caused Plaintiff "to experience significant
24 delays in being able to file the necessary legal process to remedy or redress his wrongful and illegal
25 arrest and related problems." *Id.* ¶65. Plaintiff further alleges that Defendants' actions caused him

---

[3]The County also argues (in one sentence without any authority or analysis) that the allegations related to the police report are precluded under the doctrine of claim preclusion because they were the subject of a writ of mandate action in state court, which Plaintiff voluntarily dismissed after he received the police report. The Court previously explained to the Defendant that the claim preclusion issue was not adequately briefed. Again, the County raises it, yet provides no authority or analysis in support. The Court therefore declines to address it here.

emotional distress and also "causing [him] to lose employment, career and business opportunities." *Id.* ¶66.

In order to state a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (citing *Mendocino Environment Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir. 1999). However, the Ninth Circuit has suggested in *Rhodes v. Robinson,* 408 F.3d 559, 567 n. 11 (9th Cir. 2005), that a plaintiff in a First Amendment retaliation case need demonstrate only that he or she was harmed by the government's action, and need not demonstrate both actual harm and chilling of future speech in order to state a claim in a §1983 action:

> If [the plaintiff] had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm *that is more than minimal* will almost always have a chilling effect. Alleging harm and alleging the chilling effect would seem under the circumstances to be no more than a nicety. *See, e.g., Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995) (deciding that alleged harm was enough to ground a First Amendment retaliation claim without independently discussing whether the harm had a chilling effect); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir.1989) (same).

408 F.3d at 567, n.11 (emphasis supplied).

Here, Plaintiff has alleged that he did have access to the courts, and indeed, prevailed in his effort to obtain a finding of factual innocence from the court.[4] SAC ¶16. He also alleges that he received a copy of his police report, albeit after significant delay, and after filing a petition for writ of mandate to compel Defendants to produce it. SAC ¶64. Plaintiff has not alleged how the County prevented or denied his access to the courts. Plaintiff has alleged, however, that his access to the courts was delayed and that he suffered emotional distress and lost career opportunities as a result of the delay in filing his petition for factual innocence. SAC ¶¶65-66. This claim is very weak, as

---

[4]This factor, however, is not determinative. The Ninth Circuit has expressly declined to adopt a rule whereby only those litigants who are denied access to the courts can present a First Amendment retaliation claim. If the court were to adopt such a theory, "the [plaintiff] would be stuck in an even more vicious Catch-22. The only way for [a plaintiff] to obtain relief from retaliatory conduct would be to file a [] lawsuit: yet as soon as he or she does so, it would become clear that he or she cannot adequately state a claim for relief." *Rhodes,* 408 F.3d at 569.

11

1 Plaintiff has not alleged facts that would support a finding that a person of ordinary firmness would
2 be deterred from accessing the courts. However, he has alleged harm in the form of emotional
3 distress and other financial harm due to the increased costs, and further alleges that these acts were
4 done in retaliation for his decision to exercise his First Amendment rights. He has not alleged that
5 the County's actions would chill a person of ordinary firmness from petitioning the government or
6 speaking against the government in the future, but this deficiency is not fatal to his claim under the
7 authority cited above. The issue becomes whether the harm alleged is sufficient. While the Court
8 views the harm as alleged to be minimal, this question is more properly raised on summary
9 judgment. Therefore, the Defendant's motion to dismiss the Seventh Claim is DENIED.

### 3. Eighth Claim – Conspiracy to Violate Civil Rights, 42 U.S.C. §1985

The County argues that the conspiracy claim as set forth in the Eighth Claim of the Second Amended Complaint fails to allege specific facts that could support a finding of liability under § 1985. The Court agrees, in part.

The allegations of conspiracy are aimed specifically at the acts that occurred after Plaintiff's arrest including Plaintiff's decision to file a petition pursuant to California Penal Code § 851.8(a) to seek a determination that he had been factually innocent, and for petitioning "relevant government entities to redress his grievances." SAC ¶¶70-71. Plaintiff alleges that because the Town of Atherton "and its employees/agents were upset and threatened by Plaintiff's petition" (SAC ¶72), the ". . .Town of Atherton then formed a conspiracy with Defendant San Mateo County, in which they agreed to deny Plaintiff's petition without regard to the merits of his petition and for the purpose of retaliating against Plaintiff for petitioning the government to seek redress of his grievances.. . ." SAC ¶73. The Town and County also conspired to "'stonewall' Plaintiff's efforts to seek redress for his grievances, by refusing to provide or disclose a copy of the police report of the October 19, 2008 arrest or Plaintiff, despite Plaintiff's repeated requests." *Id.*

First, as with the previous Complaint, the Court finds that this claim lacks any factual allegations of how the Defendants conspired together to commit these wrongful acts. This claim therefore fails to satisfy the pleading standard set forth above. *See Karim-Parahi, supra.* Plaintiff cites *Fobb v. Holy Cross Health Care System Corp.*, 29 F.3d 1439, 1449-50 (9th Cir. 1994) (*overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1141

12

(9th Cir. 2001), for the proposition that he need only allege that: 1) the defendants entered into a conspiracy, 2) the purpose of the conspiracy was to deprive plaintiff of his constitutional rights and 3) the acts deprived plaintiff of his rights. Opp. at 19-20. As the County correctly points out, however, Plaintiff omits the portion of the Ninth Circuit's discussion in *Fobbs* where the court explains that the above-cited three requirements *in addition to* the seven overt acts alleged by the plaintiff, satisfied pleading requirements. The court explained: "These theories of discrimination, coupled with [plaintiff's] catalog of defendants' allegedly discriminatorily motivated overt acts give defendants fair notice as to the specific acts which [plaintiff] contends demonstrate a conspiracy to interfere with his right and privilege to practice medicine based on his race and on the race of his patients." *Fobbs*, 29 F.3d at 1450. Thus, *Fobbs*, does not stand for the proposition that a plaintiff need only allege the existence of a conspiracy or allege a conspiracy in terms of legal conclusions. Although Plaintiff is correct that *Fobbs* clarified that there is no heightened pleading standard for civil rights conspiracy claims, the claims must nevertheless satisfy minimum pleading standards, which the conspiracy claim in this case does not.

Second, the Court is not convinced that opposing a petition for factual innocence as permitted under California Penal Code Section 851.8 can constitute the subject of a conspiracy under §1985. Plaintiff seeks to circumvent this issue by framing the claim exclusively in terms of a conspiracy to violate Plaintiff's First Amendment rights. In order to state a claim under §1983 and for conspiracy to violate civil rights, a plaintiff must allege that the defendant's conduct deprived the plaintiff of some "right privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). To the extent this alleged conspiracy is based upon the decision to oppose Plaintiff's petition for factual innocence, that portion of the claim is dismissed as it is based upon violations of state law. To the extent, however, that this claim is based upon the conspiracy to violate Plaintiff's First Amendment rights by seeking to prevent or delay his access to the courts by not providing him with a copy of the police report, this portion of the claim may proceed for the reasons stated above with respect to the First Amendment retaliation claim (Claim 7). SAC ¶73.

The portions of the SAC related to the decision to oppose the petition for factual innocence fails for another reason – the County is immune. The San Mateo County, acting through its District

13

1 Attorney, opposed the Plaintiff's motion for factual innocence pursuant to Cal. Penal Code §851.8.
2 Defendant argues, and this Court agrees, that in doing so, the District Attorney acted in his
3 prosecutorial capacity and as a representative agent of the state. *See Weiner v. San Diego County*,
4 210 F.3d 1025, 1028 (9th Cir. 2000) (citing *Pitts v. County of Kern*, 17 Cal.4th 340, 70 Cal.Rptr.2d
5 823, 949 P.2d 920 (1998) (reviewing California statutes and case law and holding that a district
6 attorney was a state official for purposes of § 1983 liability while acting in his prosecutorial
7 capacity, *i.e.*, deciding whether to prosecute an individual). The Plaintiff concedes that if the
8 District Attorney is acting in his prosecutorial capacity, then he would be immune under *Weiner,*
9 *supra*. Plaintiff argues, however, that the District Attorney was somehow not acting in his
10 prosecutorial capacity when he "refus[ed] to provide Plaintiff with a fair, impartial, or good faith
11 determination, based on the merits, of Plaintiff's initial application to the local law enforcement
12 agency (the first step in § 851.8)) as a method to retaliate against Plaintiff for seeking to expose the
13 wrongfulness or illegality of his arrest." Opp. at 22. The Court is not persuaded by Plaintiff's
14 argument that a prosecutor is acting as an agent of the State and not the County when he decides
15 whether to prosecute an individual, but then becomes an agent of the County, and not the State,
16 when he litigates matters having to do with that decision whether or not to prosecute. The Plaintiff's
17 argument makes little sense, and in any event, is unsupported by any citation to authority.
18 Accordingly, to the extent Plaintiff's Seventh Claim is based upon the County's opposition to his
19 petition for factual innocence, it cannot proceed.

20 Plaintiff has been given one opportunity to amend this claim previously, and therefore the
21 conspiracy claim to the extent based upon underlying violations of state law is hereby DISMISSED
22 WITH PREJUDICE. The allegations regarding a conspiracy to violate Plaintiff's First Amendment
23 rights, however, may proceed. The Defendant's motion to dismiss this portion of the claim is
24 DENIED.

### 3. Ninth Claim for Relief under § 1983 – violation of *Brady* duties

26 In the Ninth Claim, Plaintiff alleges that during the evidentiary hearing on his motion for
27 factual innocence in the California Superior Court, he requested exculpatory impeachment evidence
28 related to the Officer defendants. SAC ¶81. Plaintiff alleges that the County intentionally violated
its constitutional and legal duties to provide this evidence, including failing to disclose that it was

14

1 aware that the police report in Plaintiff's case had been altered. *Id.* ¶82. Plaintiff alleges that this
2 information "was material and valuable to Plaintiff's ability to prepare for the hearing and for the
3 cross-examination of witnesses at the hearing." *Id.* Plaintiff alleges that these acts were committed
4 by the County with the intent to interfere and obstruct Plaintiff's First Amendment right to seek
5 redress from the government for his grievances and to retaliate against him for the exercise of his
6 constitutional rights. *Id*. ¶83.

7 Plaintiff's newly-added claim for alleged "violation of *Brady* duties" fails to state a claim.
8 First, even assuming that *Brady* applies to the proceeding at issue here – for a determination of
9 factual innocence, rather than at a criminal trial[5] – Plaintiff fails to allege any prejudice as a result of
10 the County's *Brady* violations. Plaintiff prevailed after his evidentiary hearing and successfully
11 obtained a determination of factual innocence from the Superior Court. The only harm Plaintiff
12 alleges as a result of the *Brady* violations consists of the "significant delays in obtaining the
13 determination of factual innocence" and the "substantial additional monetary costs" incurred by
14 Plaintiff. SAC ¶84. Plaintiff also alleges that he suffered emotional distress as a result of the *Brady*
15 violations. *Id.* ¶85. Plaintiff cites no authority for the proposition that delay in seeking favorable
16 results from the courts can constitute prejudice sufficient for a finding of a *Brady* violation. *See*
17 *Hein v. Sullivan*, 601 F.3df 897, 906 (9th Cir 2010) (in order to establish violation of *Brady*, must
18 show prejudice).

19 While Plaintiff's allegations regarding delay and emotional distress might properly constitute
20 damages (assuming liability could be established) under §1983, these damages allegations in and of
21 themselves are insufficient to establish liability under *Brady*. As the County points out, Plaintiff
22 confuses damages with prejudice. Reply at 14. Plaintiff cites two cases in support of his argument
23 that his emotional distress and additional expenses incurred in seeking his petition for factual
24 innocence qualify as damages. *Carey v. Piphus*, 453 U.S. 247 (1978) and *Barlow v. Ground*, 943
25 F.2d 1132 (9th Cir. 1991). Neither case involves allegations of a *Brady* violation. These cases shed
26 some light on whether emotional distress and attorney's fees may qualify as damages under §1983,
27 they say nothing about prejudice.

28

---

[5] In the SAC, Plaintiff alleges that the evidentiary hearing was "treated or considered as a criminal proceeding" by the Superior Court. SAC ¶81.

In order to state a claim for a *Brady* violation, the Plaintiff must show that the failure to disclose exculpatory evidence caused him to suffer prejudice. *Hein, supra*. Plaintiff's allegations show that he was not prejudiced by the *Brady* violations at all. He prevailed in his effort to obtain a determination of factual innocence. Plaintiff attempts to distinguish *Hein, supra*, on the ground that the case is not a §1983 case, but rather, a criminal defendant's appeal seeking reversal of his conviction and a new trial. Plaintiff argues that "the requirement that the disclosure violation would have resulted in a different outcome is relevant to the determination of whether or not the remedy of reversal of the conviction is warranted. The remedy of a reversal of a criminal conviction is not applicable here." Opp. at 23. Plaintiff is correct that the requirements to establish a *Brady* violation in the criminal context differ from those in a §1983 civil rights action. However, Plaintiff cites no authority, and the Court can find none, which stands for the proposition that, in the civil rights context, a showing of prejudice under *Brady* is not required. The difference between the showing required in the criminal and civil rights contexts is whether a criminal defendant (or civil rights plaintiff) need demonstrate that the prosecutor acted deliberately.[6] "In the criminal context, there is no intent requirement to establish a *Brady* claim; whether non-disclosure was negligent or by design, it is the responsibility of the prosecutor." *Tennison I,* 2006 WL 733470 at * 28 (citing *Brady*, 373 U.S. at 87). Whereas, in the civil context, where a plaintiff alleges violations of his due process rights based upon a *Brady* violation, a plaintiff must allege and prove that the state officials deliberately deprived him of exculpatory evidence. *Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009) ("*Tennison II*").

Plaintiff relies heavily on *Tennison II, supra,* in support of his argument that no showing of prejudice is required in order to state a claim for a *Brady* violation in the civil rights context. In *Tennison*, the Ninth Circuit held that a prosecutor's failure to comply with *Brady v. Maryland* could form the basis of a §1983 claim. *Tennison II, supra* at 1092. Plaintiff selectively quotes *Tennison* in support of his argument that the constitutional violation under *Brady* occurs as soon as the

---

[6]In the criminal context, "'[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Tennison v. City and County of San Francisco,* 2006 WL 733470 at * 26 (N.D.Cal., March 22, 2006) ("*Tennison I*") (quoting *Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

16

prosecutor fails to disclose exculpatory evidence. Opp. at 24 (citing *Tennison II, supra* at 1092). Plaintiff further argues that under the Ninth Circuit's holding in *Tennison*, if the failure to disclose exculpatory evidence "resulted in a delay in the victim's vindication of his/her rights, then a §1983 action has been properly pled or maintained." Opp. at 24 (citing *Tennison II* at 1093). Plaintiff is incorrect. *Tennison* does not stand for the proposition that a *Brady* violation can be found to have occurred regardless of whether the individual suffered prejudice. The Ninth Circuit noted in *Tennison* that a *Brady* violation "may be cured ... by belated disclosure of evidence, so long as the disclosure occurs at a time when disclosure would be of value to the accused." *Tennison II*, at 1093 (citing *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000)) (internal quotations and citation omitted). In *Tennison*, the disclosure occurred *after* the information could have been of value to the criminal defendant. *Id.*

Here, Plaintiff alleges that he ultimately received a copy of the police report, and under the facts as alleged by Plaintiff here, the delay had no negative effect because Plaintiff won his petition for factual innocence in court. Plaintiff's allegations fail to state a claim for a *Brady* violation. Although Plaintiff's allegations of incurring additional expense are accepted as true, they do not constitute the required showing of prejudice. Plaintiff's *Brady* claim is not legally cognizable. Defendant's motion to dismiss this claim is GRANTED.

### 4. Eleventh Claim for Declaratory Relief

Defendant argues that the declaratory relief claim fails if all of the other claims fail. Because the Court has concluded that some of Plaintiff's claims may proceed against the County, the Eleventh Claim for declaratory relief will not be dismissed at this time.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated: September 24, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge