United States District Court
For the Northern District of California
UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN B. BUCKHEIT,<br><br>Plaintiff(s),<br><br>v.<br><br>TONY DENNIS, ET AL.,<br><br>Defendant(s). | Case No. C 09-5000 JCS<br><br>**ORDER GRANTING DEFENDANTS JERRY CARLSON AND TOWN OF ATHERTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br>**[Docket No. 87]** |

## I. INTRODUCTION

Plaintiff Jonathan Buckheit (hereafter "Plaintiff") filed this action, alleging federal and state law claims arising out of his arrest and imprisonment resulting from a domestic dispute at his home. Defendants are the Town of Atherton, Atherton Town Council member Jerry Carlson, Atherton Police Officers Tony Dennis, Dean DeVlugt, and Anthony Kockler, and Defendant County of San Mateo.[1] Before the Court is a Motion for Partial Summary Judgment (hereafter "the Motion") filed by the Defendant Town of Atherton (hereafter "Town") and Defendant Jerry Carlson ("Carlson"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for determination without oral argument.

Having considered the papers submitted, the Defendants' Motion is GRANTED.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### A. The Plaintiff's Arrest and Determination of Factual Innocence

October 20, 2009, Plaintiff Jonathan Buckheit filed an action in this Court based upon his allegedly unlawful arrest by Atherton Police Officer on the night of October 19, 2008. JSUF 1. On January 25, 2010, Plaintiff filed a First Amended Complaint ("FAC). Plaintiff alleged that he was at

---

[1] The parties have consented to the jurisdiction of this Court.

[2] The following facts are taken from the parties' Joint Statement of Undisputed Facts unless otherwise noted.

home located at 34 Selby Lane, Atherton in San Mateo County, California and telephoned "911" in order to seek the aid of the Atherton Police Department regarding a dispute with his then girlfriend/housemate. FAC ¶¶12-13. Atherton Police Officers Dennis and DeVlugt reported to Plaintiff's home in response to the call. *Id*. ¶14. After conducting an investigation, Defendants arrested Plaintiff for violating California Penal Code Section 273.5 against both his girlfriend and her minor son (willfully inflicting on a spouse or co-habitant corporal injury resulting in a traumatic condition). *Id.* ¶15. Plaintiff alleges that his arrest was wrongful, without probable cause, and in violation of Mr. Buckheit's 4th and 14th Amendment rights. *Id*. On January 12, 2010, the San Mateo County Superior Court granted Plaintiff's application for a finding of factual innocence. *Id*. ¶17. On June 18, 2010, Plaintiff filed his Second Amended Complaint, which set forth causes of action against Defendants Jerry Carlson and the Town of Atherton in his Tenth Claim for Relief, which are the matters that are the subject of the present Motion for Partial Summary Judgment. JSUF 3.

**B.    Plaintiff's Application to Serve on Atherton's Finance Committee**

On April 21, 2010, the Town of Atherton held a town meeting to review applications for new appointments to various committees, including the Arts Committee, Audit Committee, Finance Committee[3], General Plan Committee, and the Rail Committee. JSUF 4. The Town was seeking to fill three newly created positions on the Finance Committee, comprised of qualified town residents. JSUF 6. Prior to April 2010, two council members comprised the Finance Committee, which at that time included the Mayor and Vice Mayor. At the Town Council meeting just prior to this date, the Council voted to expand the committee to include three qualified resident members as well. JSUF 7. The Town of Atherton Council, committee and commission are volunteers who receive no compensation for their services to the community. JSUF 9. The Council's selection of members for any town committee, including the Finance Committee, does not consider an applicant's political affiliation or positions. JSUF 11.

---

[3] The Town of Atherton's Finance Committee has the following powers and duties: 1) Act in an advisory capacity and make recommendations to the City Council upon request in all matters pertaining to Town finances; and 2) Consult with the City Manager on matters pertaining to the budget, capital, spending plan and the long range financial plan for the Town. JSUF 5.

In April 2010, Plaintiff and six other candidates submitted applications to the Finance Committee, vying for three vacant positions. JSUF 12. The candidates included Plaintiff Buckheit, Bill Widmer, Alain Enthoven, Jeffrey Wise, Gregory Conlon, Julie Hahn, and Augie Rakow. JSUF 13. The Town Council recommended Jeffrey Wise and Gregory Conlon as the new Finance Committee members. JSUF 14. The third seat resulted in a tie between Plaintiff Buckheit and applicant Alain Enthoven. JSUF 15. At his deposition, Plaintiff testified that Jerry Carlson vetoed a proposal to expand the number of resident seats to four, so that both Plaintiff and Alain Enthoven could serve on the committee. *Id.* Eventually, the Town Council decided to keep the number of seats at three, and voted for Alain Enthoven. *Id.* As part of the application process, the candidates for the Financial Committee position completed application forms, detailing their qualifications and experience. JSUF 16. Applicant Alain Enthoven's application stated that he had a Ph.D in Economics from Massachusetts Institute of Technology (MIT) in 1956, was Deputy Comptroller for the U.S. Department of Defense from 1961 to 1965, and was Assistant Secretary of Defense for Systems Analysis from 1965 to 1969. He was also the President of Litton Medical Products from 1971 to 1973, was on the Chain Health Benefits Advisory Council, CalPERS in 1990, and served as the Chair of the Stanford Committee on Faculty/Staff on health insurance and pension plans since 2004. JSUF 20. Plaintiff's application indicated that he was the CEO and founder of a high-tech company in Silicon Valley from 1997 to 2007 and had a Ph.D. from Stanford in Statistics. He also indicated that he had significant experience in technology, management, legal issues, and financial issues. JSUF 21.

At his deposition, Plaintiff explained that he believed that Defendant Jerry Carlson's decision not to nominate him to the Finance Committee was an act of retaliation as a result of Plaintiff having asserted his right to redress his grievances by filing the present lawsuit. JSUF 22. Plaintiff testified at his deposition that he believes that Defendant Carlson used Plaintiff's lawsuit as the sole reason to deny his application to the Finance Committee. *Id.* Plaintiff testified that he believed Defendant Carlson retaliated against him because: 1) Carlson did not ask Plaintiff any questions during the interview for the position; 2) Carlson voted for Alain Enthoven instead of him despite Mr. Enthoven's absence from the town meeting; 3) Mr. Enthoven stated in his application that he did not know if he had time to serve on the committee; 4) Carlson allegedly told another person, City

3

Council Member James Dobbie, that he rejected Plaintiff's nomination due to his lawsuit and 5) another resident who attended the meeting also observed Mr. Carlson behaving in a manner that evidenced hostility toward Plaintiff. JSUF 23.

In a declaration submitted in support of the Defendants' Motion, Defendant Jerry Carlson explains that he voted for Alain Enthoven over Jonathan Buckheit due to Enthoven's "background, especially having successfully chaired a Stanford University Compensation Committee to modify retiree benefit costs." *See* Declaration of Jerry Carlson in Support of Motion for Summary Judgment (Carlson Decl.") at ¶ 16. Carlson stated that he found Entoven to be more qualified with more relevant experience than Buckheit. *Id.* Carlson explained: "Importantly, retiree pension and medical costs are a major financial challenge for our town, as I have seen during my time as a Town Councilman and member of the Town Finance Committee" *Id.* At his deposition, Defendant Carlson testified that he was "flabbergasted that there had been a tie vote between Mr. Entoven and Mr. Buckheit" because "Mr. Enthoven's qualifications were far superior over all the candidates, all the applicants." Declaration of Jerry Fong ('Fong decl."), Exh. A, 114:22-25.

### C. The Present Motion

Defendants Town of Atherton and Jerry Carlson move for partial summary judgment of the Tenth Claim for relief. In particular, the Defendants argue first that Plaintiff's Tenth Claim for Relief under 42 U.S.C. § 1983 for First Amendment retaliation fails as a matter of law because there is no evidence that Defendants' decision not to appoint Plaintiff to the Atherton Town Finance Committee was motivated by Plaintiff's exercise of his First Amendment rights. Second, the Defendants argue that the Tenth Claim fails because there is no evidence of harm nor is there any evidence of a "chilling" of future speech as a result of the Defendants' decision not to appoint Plaintiff to the Town's Finance Committee. Third, Defendant Carlson argues that he is entitled to qualified immunity for his legitimate exercise of discretion in not voting in favor of Plaintiff to serve on the Town Finance Committee. Fourth, Defendants argue that the Town of Atherton as a municipality is not vicariously liable for the actions of Council Member Carlson.

## III. ANALYSIS

### A. Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, "*Celotex* requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact," that is, "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id.* at 323. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 411 U.S. 242, 255 (1986).

### B. The Defendants' Motion

#### 1. First Amendment Retaliation Claim – Legal Standard

In order to state a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (citing *Mendocino Environment Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir. 1999). However, the Ninth Circuit has suggested in *Rhodes v. Robinson,* 408 F.3d 559, 567 n. 11 (9th Cir. 2005), that a plaintiff in a First Amendment retaliation case need demonstrate only that he or she was harmed by the government's action, and

1 need not demonstrate both actual harm and chilling of future speech in order to state a claim in a
2 §1983 action:

> If [the plaintiff] had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm *that is more than minimal* will almost always have a chilling effect. Alleging harm and alleging the chilling effect would seem under the circumstances to be no more than a nicety. *See, e.g., Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995) (deciding that alleged harm was enough to ground a First Amendment retaliation claim without independently discussing whether the harm had a chilling effect); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir.1989) (same).

408 F.3d at 567, n.11 (emphasis supplied).

### 2. Application of the Law to the Facts of the Case

Plaintiff's claim for retaliation under the First Amendment fails because there is no admissible evidence of retaliatory motive. Plaintiff's allegation that Jerry Carlson did not vote for Plaintiff in retaliation is based his own speculation about Defendant's motives. The one out of court statement cited by Plaintiff is inadmissible hearsay. Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment. *Cf. Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 at n. 2 (3d Cir.2000) ("[H]earsay statements can be considered on a motion for summary judgment if they are capable of admission at trial.").

Plaintiff alleges that a witness, Dobbie, told Plaintiff that Carlson admitted his retaliatory motive in an out of court statement to Dobbie. Plaintiff's testimony regarding Jerry Carlson's "admission" of his retaliatory motive is double hearsay because it describes a statement that (1) Dobbie made to Plaintiff about (2) a conversation that Carlson allegedly had with Dobbie. Thus, for the comment that Carlson voted against Plaintiff because of the lawsuit to be considered on summary judgment, Plaintiff must demonstrate that both layers of hearsay would be admissible at trial. *See* Fed.R.Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule....").

Here, Plaintiff cannot show that *both* parts of Dobbie's hearsay statement to Plaintiff are admissible under an exception. If, as Plaintiff alleges, Carlson informed Dobbie that Carlson voted against Plaintiff because of his lawsuit, that statement would qualify as an admission by a party opponent and would be admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence. However, Plaintiff offers Dobbie's repetition of that alleged statement for the truth of the matter asserted (*i.e.*, that the statement was made, and that Carlson retaliated against him for pursuing his

1  grievances against the government in a lawsuit). Plaintiff's *repetition* is itself therefore hearsay, and
2  is beyond the reach of any exception to the hearsay rule.

3  Because Plaintiff's recounting of Dobbie's hearsay statement is not admissible, Plaintiff
4  looks to other evidence to show retaliatory motive. Plaintiff argues that Defendant Carlson's own
5  deposition testimony about the conversation with Dobbie, in which he testified that Dobbie told him
6  that he and Plaintiff had discussed the Finance Committee vote, including the speculation that
7  Carlson had voted against Plaintiff as a result of the lawsuit, is admissible as an adoptive admission
8  under FRE 801(d)(2)(B). Plaintiff argues that when Carlson remained silent in the face of Dobbie's
9  "accusation" regarding Carlson's reason for voting against Plaintiff, Carlson adopted the truth of
10 Dobbie's accusation, *i.e.*, that he had indeed voted against Plaintiff for retaliatory reasons. Plaintiff
11 cites *U.S. v. Moore*, 522 F.2d 1068, 1075 (9th Cir. 1975) for the proposition that when an accusatory
12 statement is made within the presence of a person and the person has the opportunity to deny it and
13 does not do so in circumstances in which an innocent person would normally be induced to respond,
14 then the silence may be interpreted as an adoptive admission. Plaintiff's Opp. at 20.

15 The Court is not persuaded by this argument. First, the facts of this case do not fit this
16 hearsay exception. There is no evidence in the record that Carlson was actually "accused" of
17 retaliating against Plaintiff. Rather, the deposition testimony on this subject indicates that Dobbie
18 and Carlson discussed the Finance Committee vote after the meeting on April 21st, and that Carlson
19 (who was stunned that it had been a close vote, given Enthoven's superior qualifications) asked if
20 Dobbie had voted *for* Mr. Buckheit because of the lawsuit. Fong Decl., Exh. A (Carlson Depo. Tr.
21 115 3-7). "He [Mr. Dobbie] said something to the words that we voted for him because he thought –
22 we thought that he might not sue us anymore, something – words to that effect." *Id.* Later, Carlson
23 and Dobbie had lunch together, and at that lunch, Dobbie brought up the topic of Buckheit and the
24 Finance Committee vote. *Id.* at 120. Carlson testified at his deposition: "He [Dobbie] brought up
25 Mr. Buckheit, said Mr. Buckheit had given him a telephone call after the meeting and asked him the
26 question, did he think that I had not voted for Mr. Buckheit because of the lawsuit? Mr. Dobbie
27 said, 'I guess that I said that maybe he did.'" *Id.* 120:25-121:1-6. Carlson testified that he did not
28 say anything, but "just listened." *Id.* at 121:14.

This somewhat ambiguous exchange, including Dobbie's use of the words "I guess I said" does not constitute a clear accusation nor does it present a situation in which an accused would necessarily be expected to make a denial.

Under FRE 801(d)(2)(B), a statement is not hearsay if the party against whom it is offered "has manifested his adoption or belief in its truth." *United States v. Moore*, 522 F.2d 1068, 1075 (9th Cir. 1975), *Cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976). There, the Ninth Circuit stated:

> The general rule concerning admissions by silence or acquiescence is well established. When an accusatory statement is made in the defendant's presence and hearing, and he understands and has an opportunity to deny it, the statement and his failure to deny are admissible against him.

522 F.2d at 1075. In order to make this determination, "[t]he court should determine that sufficient facts have been introduced for the jury reasonably to conclude that the defendant heard, understood, *and acceded* to the statement." *Id.* at 1076 (emphasis added). On summary judgment, the Court must assess the circumstances in order to ascertain whether the proper foundation has been made. The Court finds the adoptive admission hearsay exception inapplicable on the facts of this case. *But see Transbay Auto Service, Inc. v. Chevron U.S.A. Inc.*, 2010 WL 4591596 *6 (N.D. Cal., November 3, 2010) ("For purposes of ruling on this evidentiary objection [adoptive admission], the Court need only decide whether there is enough evidence for a jury reasonably to conclude that the plaintiff adopted the statement. On this record, there is enough such evidence, albeit disputed.")

Plaintiff argues that Dobbie's statement to Plaintiff is admissible under Rule 801(d)(2)(C) or (D) because Dobbie, as a member of the Atherton City Council was either "a person authorized by a party (the Town of Atherton) to make a statement concerning the subject or as an agent or representative of a party (again, the Town of Atherton)." Opp. at 23. The Court disagrees. Plaintiff has made no foundational showing that Dobbie was an agent of the Town, or authorized to speak on behalf of the Town of Atherton, regarding what Carlson said in a conversation *after* the conclusion of the Town Council meeting.[4]

---

[4] The Court similarly rejects Plaintiff's argument that the statement is admissible under FRE 613 as a witness' prior inconsistent statement. Plaintiff argues that Plaintiff would be "entitled to testify that, in a prior inconsistent statement made by Mr. Dobbie, he admitted to Mr. Buckheit that he had heard Mr. Carlson saying that he had voted against Mr. Buckheit because he was suing the Town." Opp.

8

Plaintiff's argument under Rule 701 fares no better. Plaintiff attempts to characterize Dobbie's alleged statement that he believed Carlson voted against Plaintiff for retaliatory reasons as "lay opinion testimony" that is admissible under Rule 701. Plaintiff is incorrect. Dobbie's "opinion" is based on nothing more than an alleged out of court statement from Carlson to Dobbie. The "opinion" testimony advanced by Plaintiff is not based upon Dobbie's *perception* of Carlson; it is based upon one single hearsay statement. As such, it fails to meet the requirements of Rule 701 for lay opinion testimony. *See* FRE 701.[5] Finally, the Court is not persuaded by Plaintiff's reliance on the residual hearsay exception. FRE 807. No circumstantial guarantees of trustworthiness have been offered for the hearsay statement in this case.

In sum, the only admissible evidence Plaintiff submits that Defendant voted against him in retaliation for his exercise of his First Amendment rights, involve his own speculation based upon: 1) Defendant Carlson's failure to ask him questions at his interview (despite asking questions of the other applicants); 2) Defendant's failure to look at Plaintiff in the eye during the interview; 3) Plaintiff's belief that he is more qualified and had more time to serve on the Committee than the individual who was appointed, Alain Enthoven; and 4) Carlson's objection to expanding the number of Committee seats to four in order to accommodate Plaintiff. *See* Declaration of Alan J. Chang Decl., Exh. D, 7:14; 13:21-14:3; 16:20-22. Even accepting all reasonable inferences in Plaintiff's favor, no reasonable jury could conclude on the basis of this speculation alone that Defendant retaliated against Plaintiff based upon this lawsuit.

### 3. Plaintiff's *Monell* Claim Against the Town of Atherton

Defendants argue that Plaintiff's Tenth Claim for relief fails as a matter of law because the Town of Atherton cannot be vicariously liable for the actions of council member Jerry Carlson, and there is no custom, policy or practice of retaliating against individuals who exercise their First Amendment rights in the Town of Atherton. The Court agrees.

---

at 23. There is no evidence before this Court of any testimony by Dobbie inconsistent with his hearsay statement.

[5] Rule 701 provides that: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

9

A municipality can be found liable under 42 U.S.C. §1983 only where the municipality itself causes the constitutional violation at issue; *respondeat superior* or vicarious liability will not attach under section 1983. *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff must allege that: (1) Mr. Buckheit was deprived of his constitutional rights by City employees acting under color of State law; (2) the City had customs or policies which "'amounted to deliberate indifference' to [his] constitutional rights;" and that (3) these policies were the "'moving force behind the constitutional violation[s].'" *Oviatt v. Pearce*, 954 F.2d 1470, 1473, 1477 (9th Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)) (alterations in original). Further, acquiescence in a practice or custom is a cognizable claim under *Monell*. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

A municipality's failure to train or supervise its employees properly can create section 1983 liability where such a failure is "conscious" or "amounts to deliberate indifference to the rights of persons" with whom its employees are likely to come into contact. *City of Canton*, 489 U.S. at 388-89. The inadequate training must have actually caused the constitutional injury. *Id.* "That happens when the municipality makes a deliberate, conscious choice, and the resulting deficient training has a direct, causal link to the deprivation of federal rights." *Gomez v. City of Fremont*, 2010 WL 2898313 at *13 (N.D. Cal. July 21, 2010) (citing *City of Canton*, at 388).

In the present case, Defendant Town of Atherton argues that the Town cannot be held vicariously liable for the actions of Council member Jerry Carlson and that no evidence exists to support the Plaintiff's argument that the Town of Atherton had a policy, custom or longstanding practice to deliberately retaliate against those applicants who apply for volunteer town committee positions who have sued the Town. Motion at 17. The Court agrees. There is no evidence before the Court that the Town of Atherton has any policy, practice or custom of retaliating against individuals who apply for volunteer positions with the Town on the basis of their exercising their First Amendment right to petition the government of redress of grievances. Nor is there any evidence of the Town's direct involvement, such as directing Defendant Jerry Carlson to retaliate against Plaintiff. Finally, there is no evidence that the Town of Atherton's omissions led to Jerry Carlson's alleged acts of retaliation against Plaintiff. Any claim of retaliation against the Town of

Atherton on the basis of the Defendant Jerry Carlson's failure to vote for Plaintiff for the Town's Finance Committee fails as a matter of law.

**IV.     CONCLUSION**

    For the foregoing reasons, the Defendant's Motion is GRANTED.

IT IS SO ORDERED.

Dated: March 4, 2011

                                    JOSEPH C. SPERO
                                    United States Magistrate Judge