UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONATHAN BUCKHEIT,

    Plaintiff,

v.

TONY DENNIS, et al.,

    Defendants.

Case No.: 3:09-cv-05000-JCS

**ORDER GRANTING DEFENDANT COUNTY OF SAN MATEO'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 [Dkt. No. 304].**

## I. INTRODUCTION

Plaintiff Jonathan Buckheit (hereafter "Plaintiff") filed the instant action asserting constitutional violations in connection with his arrest following a domestic violence dispute at his home on October 20, 2008. The Court granted summary judgment in favor of all defendants in this action, including the County of San Mateo (hereafter "the County"), and denied Plaintiff's motion for summary judgment. The County now moves for attorneys' fees under 42 U.S.C. § 1988 in the amount of $152,041.50, contending all claims asserted against the County were frivolous. The Court rules on the Motion without oral argument pursuant to Local Rule 7-1(b). For the reasons stated below, Defendant's Motion is GRANTED.[1]

## II. BACKGROUND

### A. Factual Background[2]

On October 20, 2008, police officers from the Atherton Police Department responded to Plaintiff's 911 call regarding a domestic violence dispute between Plaintiff and his ex-girlfriend

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] The facts described in this section pertain solely to the County's role in this case. Additional facts are in the Court's order dated April 6, 2012. *See* Dkt. No. 278.

(hereafter "CV-1"). Upon interviewing Plaintiff, CV-1, and CV-1's nine-year-old son, the officers determined Plaintiff was the dominant aggressor and arrested him and not CV-1. To determine Plaintiff was the dominant aggressor, the officers followed the Atherton Police Department's policy on domestic violence which instructs officers to consider the height/weight differential between two individuals as one factor in determining who is the dominant aggressor in a mutual domestic violence situation. Dkt. No. 193 (Amended Joint Statement of Undisputed Material Facts between Plaintiff and the Town of Atherton) (hereafter "JSUF") ¶ 87. Throughout the litigation of this case, Plaintiff argued that the officers' consideration of the height/weight differential between him and CV-1 discriminated against him on account of his gender, and was the reason why the Atherton police officers arrested him and not CV-1.

In addition to suing the Atherton police officers and the Town of Atherton, Plaintiff sued the County, alleging the County and the Town of Atherton entered into an agreement under which the County would create the discriminatory policy and the Town of Atherton would instruct the Atherton police officers to implement the policy. Plaintiff based this allegation on the fact the Atherton Police Department's policy on domestic violence (Policy 320) incorporates the "Domestic Violence Protocol for Law Enforcement, County of San Mateo" (hereafter "the Protocol"). Declaration of Jerry Fong ("Fong Decl."), Exh. 30 (Atherton Police Department Policy Manual) at 116. The Protocol was developed by a working group composed of several individuals working in various entities, only some of which are County entities, and was approved by the San Mateo County Police Chiefs' and Sherriffs' Association. *Id.* The County's former Chief Deputy District Attorney, Mr. Wagstaffe, states that the San Mateo County Police Chiefs' and Sherriffs' Association is not a County entity. Declaration of Stephen M. Wagstaffe ("Wagstaffe Decl.") ¶ 3.

Plaintiff also alleged the County trained Atherton police officers to implement the County's discriminatory policy, and through the County's training and agreement with the Town of Atherton, exerted control over the Atherton police officers. Mr. Wagstaffe states that the County "has no authority to direct the actions of Atherton Police Department officers." *Id.* ¶ 2. The former Chief of Police of the Town of Atherton, Mr. Nielsen, states that at the time of

Plaintiff's arrest, "the Atherton Police Department was not obligated to follow the San Mateo Domestic Violence Protocol when responding to domestic violence incidents, but did so at its own choosing." Declaration of Glenn Nielsen ("Nielsen Decl.") ¶ 10. The Protocol itself states that it was developed as a "guideline and reference for law enforcement officers responding to reports of domestic violence." Fong Decl. Exh. 30 at 116.

After Plaintiff's arrest, the Atherton Police Department sent a copy of the police report to the San Mateo County District Attorney's Office with a recommendation that charges be filed against Plaintiff. JSUF ¶ 130. The District Attorney declined to file charges against Plaintiff, and on October 29, 2008, sent a fax to the Atherton Police Department indicating they would not prosecute the case. JSUF ¶ 136.

Plaintiff subsequently petitioned the Atherton Police Department for a determination of factual innocence pursuant to California Civil Code § 851.8(a), and served a copy of the petition upon the San Mateo County's District Attorney's Office. Mr. Wagstaffe and Mr. Nielsen discussed Plaintiff's petition. Wagstaffe Decl. ¶ 9. The Town of Atherton and the County did not grant Plaintiff's petition. Thereafter, Plaintiff successfully obtained a judicial determination of factual innocence by the San Mateo Superior Court pursuant to California Civil Code § 851.8(b).[3]

Plaintiff also alleged that his petition for factual innocence prompted the County to conspire with the Town of Atherton to retaliate against Plaintiff for exercising his First Amendment right to file a petition, and that they in fact retaliated against him by not releasing a copy of his police report.[4] However, Mr. Wagstaffe states the County was only in possession of Plaintiff's police report on two occasions, and not when Plaintiff requested the copy of the report

---

[3] It was undisputed in this case that there were factual inaccuracies in Plaintiff's police report regarding Plaintiff's contact with CV-1's son.

[4] On November 24, 2008, Plaintiff made a Public Records Act request to the Town of Atherton for a copy of the police report documenting his arrest. JSUF ¶ 138. On December 8, 2008, the Town of Atherton informed Plaintiff that the police report was not subject to disclosure pursuant to California Government Code § 6254(f). *Id*. ¶ 139. Plaintiff eventually obtained a copy of the police report by filing a writ of mandamus in the San Mateo County Superior Court to compel disclosure of the police report from the Town of Atherton. JSUF ¶ 144. The Town of Atherton was assessed $7,922.50 in attorneys' fees for causing Plaintiff to file the writ to obtain a copy of the police report. *Id.*

3

from the County. Wagstaffe Decl. ¶ 10. Mr. Wagstaffe states that after the County decided not to prosecute Plaintiff, they returned the initial copy of Plaintiff's police report to the Town of Atherton, as it is customary for the County to not retain a copy of police reports relating to cases the County is not prosecuting. Wagstaffe Decl. ¶ 7. Mr. Wagstaffe states he was in possession of the police report again when he discussed Plaintiff's factual innocence petition with Mr. Nielsen, but that he disposed of that copy after the discussion. *Id*. ¶ 9. When Plaintiff requested the County to give him a copy of the police report, Mr. Wagstaffe informed Plaintiff that the County was no longer in possession. Wagstaffe ¶ 10. The County also asked the Atherton Police Department if it would give Plaintiff a copy of the police report, and learned that it would not. Declaration of Brian Wong, Wagstaffe Depo 22:3-25:10.

### B. Procedural History

On October 20, 2009, Plaintiff filed the instant lawsuit against his arresting officers, the Town of Atherton, and the County. In Plaintiff's initial complaint, he alleged the County was jointly and severally liable for the alleged constitutional violations committed against Plaintiff by the Atherton police officers. *See* Dkt. No. 1. The County filed a motion to dismiss, asserting that there was no connection between the County and Plaintiff's alleged injuries because the arresting officers were not County employees and the Town of Atherton is a separate entity. *See* Dkt. No. 11. Plaintiff then filed a First Amended Complaint, asserting essentially the same allegations against the County. *See* Dkt. No. 19. The County filed another motion to dismiss, and on May 18, 2010, the Court dismissed all claims against the County with leave to amend, noting Plaintiff's failure to plead any facts connecting the County to his alleged constitutional violations. *See* Dkt. No. 51.

On June 18, 2010, Plaintiff filed his Second Amended Complaint wherein he altered his allegations against the County. *See* Dkt. No. 53. For instance, Plaintiff's asserted equal protection claims against the County (claims 3 and 4) based on new allegations that the County and the Town of Atherton entered into an agreement under which the County created a policy to intentionally discriminate against adult males in domestic violence disputes, and Town of Atherton required police officers to carry-out that policy. Plaintiff also alleged the County trained

4

1 Atherton police officers to carry-out this discriminatory policy and exerted control over them, and
2 was thus a "moving force" behind his purported constitutional violations. Plaintiff asserted a
3 retaliation claim (claim 7) based on the County's purported refusal to give Plaintiff a copy of the
4 police report in retaliation for Plaintiff having filed a factual innocence petition. Plaintiff also
5 asserted a section 1985 conspiracy claim (claim 8) against the County and the Town of Atherton
6 for agreeing to deny Plaintiff's factual innocence petition without regard to the merits, and for
7 agreeing to "stonewall" Plaintiff's access to the courts by withholding a copy of his police report.
8 Finally, Plaintiff asserted a *Brady* claim (claim 9) against the County for its failure to disclose all
9 favorable evidence during Plaintiff's factual innocence proceeding, including the fact it was
10 aware the police report had been materially falsified to increase the chance Plaintiff would be
11 prosecuted.

12 The County filed a motion to dismiss all claims in Plaintiff's Second Amendment
13 Complaint asserted against the County. *See* Dkt. No. 55. The Court dismissed some of Plaintiff's
14 claims and allowed others to continue, although warning Plaintiff that his claims against the
15 County were very weak. *See* Dkt. No. 74; *see also* Transcript of September 3, 2010 Hearing on
16 the Motion to Dismiss, Dkt. No. 73 at 10:21-24 ("[I]t's a tactical mistake to sue the County. I
17 think it just means that the Plaintiff subjects themselves to a potential award of attorneys' fees in
18 the end when they lose against one of the parties."). The Court allowed Plaintiff's equal
19 protection claims (claims 3 and 4) to proceed—despite noting they were "extremely weak"—
20 because Plaintiff alleged a sufficient basis relating to the existence of an agreement between the
21 County and the Town of Atherton and the County's control over Atherton officers. *Id.* at 6-10.
22 The Court also allowed Plaintiff's retaliation claim to proceed, as it was based on a First
23 Amendment violation, although noting it was a "close call" and "more properly raised on
24 summary judgment." *Id*. at 11:25, 12:8-9. The Court dismissed Plaintiff's section 1985
25 conspiracy claim (claim 8) to the extent it alleged a conspiracy to violate state law and not
26 Plaintiff's constitutional rights. To the extent the claim alleged a conspiracy to deprive Plaintiff
27 of his First Amendment right to access the courts by withholding from Plaintiff a copy of his
28 police report, the Court allowed the claim to proceed. Finally, the Court dismissed Plaintiff's

5

*Brady* claim (claim 9), because having prevailed at the factual innocence determination, Plaintiff could allege no prejudice.

On April 6, 2012, the Court entered summary judgment in favor of all Defendants, including the County, and denied Plaintiff's motion for summary judgment. As to the equal protection claims (claims 3 and 4), the Court found the Atherton Police Department's domestic violence policy to be facially neutral. After undergoing a detailed analysis of this claim in connection with the Town Defendants, and in finding no evidence whatsoever of any discrimination, the Court quickly disposed of the more attenuated claims against the County. The Court also rejected Plaintiff's retaliation claim, finding no evidence of a chilling effect or of any desire to retaliate against Plaintiff for having filed his factual innocence petition. Having determined that there was no evidence in this case of retaliation on account of Plaintiff's factual innocence petition, the Court disposed of the remaining portion of Plaintiff's section 1985 conspiracy claim which related to the retaliation claim.

### C. County's Motion for Attorneys' Fees

The County asserts it is entitled to attorneys' fees relating to all claims asserted against the County on grounds that all claims frivolous. The County argues that Plaintiff's *Brady* claim (claim 9)—which the Court dismissed with prejudice at the pleading stage—was frivolous because having prevailed at his factual innocence proceeding, Plaintiff did not and could not have alleged any prejudice. The County further contends that those claims disposed of on summary judgment (claims 3, 4, 7 and 8 (in part)) were also frivolous because there has never been any evidence to support these claims, and further, Plaintiff ignored evidence indicating these claims against the County had no merit.

Specifically, the County argues that Plaintiff's equal protection claims (claims 3 and 4) were frivolous because there was no basis in law or fact to argue the County violated Plaintiff's right to equal protection through his arrest by Atherton police officers. With regard to the law, the County argues that Plaintiff ignored the applicable control test for the County's liability under *Arnold v. Inernational Business Machines Corp.*, 637 F.3d 1350 (9th Cir. 1981), and instead insisted upon a generalized proximate cause theory of liability which was contrary to controlling

6

authority. As to the facts, the County argues that Plaintiff never had any factual basis to link the County to the purported wrongful acts undertaken by the Atherton police officers. The County contends that Plaintiff failed to prove the domestic violence policy was a County policy or even that the County was responsible for its creation. Further, the County argues Plaintiff did not identify—and given its separate status from the Town of Atherton, could not have identified—any evidence which showed the County trained or controlled the Atherton police officers, or that the County entered into any agreement with the Town of Atherton. The County argues that through the course of litigation, Plaintiff ignored evidence to the contrary, including evidence that the County and the Town of Atherton were distinct entities, evidence that the domestic violence policy was facially neutral, and evidence that the domestic violence policy is not binding upon any agency, including testimony from the Atherton Chief of Police that Atherton had discretion to determine whether to adopt the policy.

The County also argues Plaintiff's retaliation claim (claim 7) was frivolous given the abundance of evidence contradicting this claim. The County states that the District Attorney's Office does not retain police reports which do not relate to a crime the County is prosecuting, which is why the County did not have a copy of the report when Plaintiff made his request. The County asserts that Plaintiff was informed the County was not in possession of the report, but still alleged in the Second Amended Complaint the County was in possession and control of the report at all relevant times.[5]

Finally, with regard to Plaintiff's section 1985 conspiracy claim (claim 8), the County contends there was never any class-based or invidiously-discriminatory animus—a necessary element of any 1985 claim—to support this claim. The County argues that Plaintiff's assertion of a conspiracy was pure speculation lacking any factual basis, and the fact that the County

---

[5] The County also argues that there was no basis for Plaintiff to argue (having never pleaded this in the Second Amended Complaint) that the County had an affirmative duty to notify Plaintiff that child abuse charges had been filed against him under the reasoning of *Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir. 2006), because child abuse charges were never in fact filed against Plaintiff and Plaintiff was never placed on the CACI.

7

communicated with the Town of Atherton does not give rise to a reasonable inference that the two entities conspired to opposed Plaintiff's factual innocence without regard to the merits.

### D. Plaintiff's Opposition

Plaintiff opposes the County's Motion for attorneys' fees, and argues that none of his claims against the County were frivolous. Plaintiff argues generally that he cannot be faulted for the lack of evidence supporting his claims, or for ignoring evidence contradicting his claims, because Rule 8 only requires a "short and plain statement" entitling him to relief. Plaintiff also argues that the Court's analysis of Plaintiff's claims "required such careful, lengthy, and detailed consideration," and that this fact "alone" is sufficient to find Plaintiff's claims were not frivolous.

With respect to Plaintiff's equal protection claims (claims 3 and 4), Plaintiff argues that the Court's discussion of Plaintiff's evidence is itself evidence that Plaintiff's claims were not frivolous. Plaintiff contends the Court's determination of these claims was for Plaintiff's insufficient evidence, but that Plaintiff still had some evidence in support of these claims. For instance, there was evidence that the County had formulated a domestic violence policy, that Atherton trained its officers with respect to that policy, and that Atherton followed said policy when arresting Plaintiff. On this basis, Plaintiff contends the policy and training were arguably the moving force behind the arrest of Plaintiff on account of his gender, and therefore, the equal protection claims were not frivolous.

Regarding Plaintiff's retaliation claim (claim 7), Plaintiff argues the Court's finding that there was no chilling effect as a matter of law was incorrect, and in any event, Plaintiff's First Amendment claim was arguable and not frivolous. Plaintiff contends that even a trivial retaliatory consequence will establish a First Amendment claim, and that there was some support for Plaintiff's theory that the County retaliated against him for having filed a factual innocence petition by temporarily withholding his police report.

With regard to Plaintiff's conspiracy claim (claim 8), Plaintiff contends it was not frivolous because the Court dismissed this claim as to the County on grounds of the County's immunity. Plaintiff contends that immunity can be a difficult subject, and that he had an arguable basis to contend the County was not acting as a prosecutor when it litigated Plaintiff's factual

8

innocence. Plaintiff notes that no other case has held that a prosector's decision to oppose a post-prosecution request for declaration is subject to prosecutorial immunity, and thus this argument was not frivolous. Plaintiff also contends that it was reasonable to believe that the County and Town of Atherton were working together to deny his petition for factual innocent without regard to the merits, especially given the County's assertion that they in fact discussed Plaintiff's request for factual innocence with the Town of Atherton.

Finally, as to Plaintiff's *Brady* claim (claim 9), which the Court dismissed at the pleading stage), Plaintiff contends that his "creative and novel use of *Brady*" was also not frivolous. Plaintiff argues that prosecutors fail to fully understand the complexities of *Brady*, and that he should not have to pay attorneys' fees for failing to understand the same.

**III. DISCUSSION**

    **A. Attorneys' Fees under 42 U.S.C. § 1988**

Under 42 U.S.C. § 1988, a court in its discretion may award reasonable attorneys' fees in a civil rights action. "However, because Congress wanted to encourage individuals to seek relief for violations of their civil rights, § 1988 operates asymmetrically. A prevailing plaintiff may receive attorneys' fees as a matter of course, but a prevailing defendant may only recover fees in 'exceptional circumstances' where the court finds that the plaintiff's claims are 'frivolous, unreasonable, or groundless.'" *Braunstein v. Arizona Dept. of Transp.*, 683 F.3d 1177, 1187 (9th Cir. 2012) (citing *Harris v. Maricopa Cnty. Superior Court,* 631 F.3d 963, 971 (9th Cir. 2011) (internal quotations omitted)). Although an award of attorneys' fees in favor of a defendant must be based on frivolous claims, the defendant need not prove the plaintiff acted in bad faith. *Christiansburg Garment Co. v. Equal Employment Opportunity Com'n*, 434 U.S. 412, 421 (1978). The Supreme Court has noted that defendants may recover fees because "Congress sought to protect defendants from burdensome litigation having no legal or factual basis." *Fox v. Vice*, -- U.S. ---, 131 S.Ct. 2205, 2213 (2011) (internal quotations omitted).

In a suit "involving both frivolous and non-frivolous claims, a defendant may recover the reasonable attorneys' fees he expended solely because of the frivolous allegations." *Id.* at 2218. More specifically, the Supreme Court has held that "[s]ection 1988 permits the defendant to

9

receive only the portion of fees that he would have not paid *but for* the frivolous claim." *Id.* at 2215 (emphasis added). In the event a number of the plaintiff's claim are not frivolous, "the burden on the defendant to establish that fees are attributable solely to the frivolous claims is from a practical standpoint extremely difficult to carry." *Braunstein*, 683 F.3d at 1189 (quoting *Harris,* 631 F.3d at 972).

### B. Whether Plaintiff's Claims against the County were Frivolous

The Court finds that all claims against the County were. The County should never have been a part of this lawsuit. Plaintiff's grievances were with the Town of Atherton, not the County. It was the Atherton's police officers who arrested Plaintiff, the Atherton police officers who wrote a factually incorrect police report, and the Atherton Police Department who temporarily withheld the police report from Plaintiff. Plaintiff's claims against the County did not only fail for lack of evidence; there was no reasonable basis in law or fact to assert any claims against the County in the first place.

#### 1. *Equal Protection Claims (claims 3 and 4)*

Plaintiff's equal protection claims against the County were frivolous and unsupported in law and fact. As a preliminary matter, Plaintiff could not prevail on his equal protection claims against any of his named defendants because there was simply no evidence of discrimination. The arresting officers followed a facially neutral protocol in determining who was the dominant aggressor in a domestic violence situation. Plaintiff's evidence of this policy's discriminatory effect was wholly insufficient to make out a discrimination claim based on disparate impact. On this basis, the Court disposed of the discrimination claims against all Defendants, including the County. *See* Dkt. No. 278 at 36:1-4.

Moreover, in addition to the lack of evidence, Plaintiff's discrimination claims against the County failed because the attenuated circumstances connecting the County to this case rendered these claims frivolous. The Court discussed the County's potential liability for the conduct of Atherton's police officers in its order granting in part and denying in part the County's motion to dismiss Plaintiff's Second Amended Complaint. *See* Dkt. No. 74 at 6-10. After noting the County could not be liable under a *Monell* theory of liability because the police officers were not

County employees, the Court allowed these claims to proceed because Plaintiff alleged that the County and the Town of Atherton entered into an agreement to implement a discriminatory policy created by the County, that the County trained and exercised control over the Atherton police officers, and therefore was the "moving force" and behind Plaintiff's purported injuries. Although the Court allowed these claims to proceed, the Court noted the equal protection claims against the County were "extremely weak." Dkt. No. 74 at 9:15.

As revealed by the evidence at the summary judgment phase, Plaintiff's claims were baseless from the outset. Plaintiff had no reason to suspect the County entered into any agreement with the Town of Atherton, even if the County was responsible for drafting a domestic violence policy which was ultimately adopted by the Atherton Police Department. The Chief of the Atherton Police Department stated in his declaration that Atherton had discretion to decide whether or not to follow the domestic violence policy. Nielsen Decl. ¶ 10. Other evidence revealed that the County did not require the Town of Atherton to implement the domestic violence policy. Wagstaffe Decl. ¶ 2. Plaintiff did not and could not dispute this evidence.

Plaintiff's arguments to the contrary are without merit. The Court agrees that males may assert legitimate claims of gender discrimination, but Plaintiff's set of facts do not substantiate any legitimate claim against the County. The fact the Court discussed Plaintiff's evidence does not make the evidence meritorious or even relevant. Plaintiff's evidence did not come close to showing the County was a moving force behind Plaintiff's injuries. At best, the evidence shows that County entities played some role in drafting a facially neutral domestic violence policy adopted by the Atherton Police Department. Beyond that one immaterial fact, Plaintiff failed to substantiate any of the allegations upon which these claims barely survived the County's motion to dismiss—that the County entered into an agreement with the Town of Atherton to implement an official discriminatory policy, and that the County trained and exerted control over the Atherton police officers to carry-out the purported discriminatory policy. These allegations were baseless, and the County should not have to bear the expense of defending such frivolous claims.

### 2. *First Amendment Retaliation Claim (claim 7)*

In the seventh claim for relief, Plaintiff alleged the County withheld a copy of his police report to interfere with Plaintiff's First Amendment right to petition the government for a factual innocence determination. Plaintiff alleged the County would not have withheld a copy of the police report "except to retaliate against Plaintiff for exercising his constitutional rights." SAC ¶ 63. In the summary judgment order, the Court granted summary judgment in favor of defendants on this claim upon finding no evidence of any chilling effect or intent to discriminate against Plaintiff for having filed a factual innocence petition.

Underlying the retaliation claim against the County was Plaintiff's assertion that the County "had possession and control of the police report" at all relevant times. SAC ¶ 61. However, before this allegation was made, the County informed Plaintiff that it was not in possession of the police report, *see* Wagstaffe Decl. ¶ 10, and Plaintiff does not dispute this fact. The County had a copy of the police report at the time the County declined to prosecute Plaintiff, and at the time the County considered Plaintiff's factual innocence petition. However, as a matter of course, the County did not retain a copy of the police report because the report did not correspond to any case the County was prosecuting. Thus, at the time Plaintiff made his requests for the police report from the County, the County was no longer in possession.

The dispute regarding Plaintiff's access to the police report was between Plaintiff and the Town of Atherton, not between Plaintiff and the County. The Town of Atherton denied Plaintiff's public records request for a copy of the police report, and the Town of Atherton ultimately gave Plaintiff a copy of the police report along with attorneys' fees. Even with these facts, Plaintiff could not prove that the Town of Atherton's actions caused a chilling effect, or that the Town of Atherton was motivated by a desire to retaliate against Plaintiff for having filed a petition for factual innocence—two requisite elements of a First Amendment retaliation claim. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

Plaintiff's case against the County was much weaker. Aside from the fact the County was not in possession of the police report, Plaintiff could not show that the County, like the Town of Atherton, wrongfully withheld the police report and was subject to attorneys' fees as a result.

12

Thus, there was simply no adverse action taken by the County which could have had a possible chilling effect. Moreover, there was no reasonable basis to allege the County was motivated by a desire to reliate against Plaintiff. A determination of factual innoncence—the crux of Plaintiff's protected activity—would not have reflected poorly on the County because the County had already declined to press charges against Plaintiff and did not take part in drafting the police report. Under these facts, Plaintiff's retaliation claim against the County was simply frivolous.[6]

### 3. *Section 1985 Conspiracy Claim (claim 8)*

In the eighth claim of the Second Amended Complaint, Plaintiff alleged the County and the Town of Atherton conspired to deny Plaintiff's petition for factual innocence without regard to the merits, and agreed to "stonewall" Plaintiff's efforts to receive a copy of his factual innocence determination. At the pleading stage, the Court dismissed this claim to the extent the alleged conspiracy was based on the decision to oppose Plaintiff's factual innocence determination, as that was a matter of state law and not constitutional rights. *See* Dkt. No. 74 at 13. The Court also dismissed this portion of the claim based on the County's prosecutorial immunity. *See id*. at 13-14. However, the Court denied the County's motion to dismiss to the extent Plaintiff's conspiracy claim related to an agreement to withhold the police report from Plaintiff in order to obstruct Plaintiff's access to the courts—a First Amendment violation. At the summary judgment stage, the Court granted summary judgment in favor of the County on this claim. *See* Dkt. No. 278 at 35. The Court found no evidence of class-based or invidiously-discriminatory animus, no evidence of retaliation, and "no evidence whatsoever of any agreement between the Town and County." *Id.*

---

[6] Plaintiff also contended in his summary judgment papers that whether the County had actual possession of his police report was irrelevant given the County's affirmative duty to notify Plaintiff that child abuse charges had been filed against him under *Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir. 2006). *See* Memorandum of Points & Authorities in Support of Plaintiff's Opposition to the Summary Judgment Motion by Defendant County of San Mateo at 8-9. This argument was also baseless. Despite Plaintiff's speculation, no child abuse charges were ever filed against Plaintiff, and Plaintiff was never placed on the CACI. Thus, no duty from *Humphries* applies to this case. Although Plaintiff did not assert this as a claim agianst the County, he argued as much as part of his retaliation claim in his summary judgment papers, thus prompting the County to expend resources responding to this argument.

The Court also finds that Plaintiff's section 1985 conspiracy claim was frivolous. With regard to the portion of the claim the Court dismissed at the pleading stage—those allegations based on the County's decision to oppose Plaintiff's petition for factual innocence—Plaintiff argues it was not frivolous because the Court's dismissal was based on immunity grounds, and the line between prosecutorial and administrative functions is often difficult to draw. Plaintiff mischaracterizes the Court's order. *See* Dkt. No. 74 at 13. In addition to the County's prosecutorial immunity, the Court dismissed this portion of the claim for the more obvious reason that these allegations were based on state law violations. There is simply no constitutional violation in opposing Plaintiff's factual innocence petition without regard to the merits. The obligation to consider the merits of Plaintiff's factual innocence petition is a matter of state law. Section 1985 does not apply to violations of state law, and this portion of the claim was frivolous.

With regard to the portion of the claim which survived the pleading stage but was ultimately resolved in favor of Defendants—the alleged conspiracy to withhold the police report in order to interfere with Plaintiff's access to the courts—the Court finds this portion was also frivolous. The Court has already discussed why it was frivolous to accuse the County of retaliation on account of the County's "failure" to provide Plaintiff with a copy of the police report. The same reasoning applies here. Additionally, it was also frivolous to allege any agreement between the County and the Town of Atherton. The mere fact that the County conversed with the Town of Atherton regarding Plaintiff's case does not give rise to a reasonable inference that they conspired to deprive Plaintiff of his constitutional rights.

### 4. *Brady* Claim (claim 9)

Finally, the Court also finds that Plaintiff's *Brady* claim, which the Court dismissed with prejudice at the pleading stage, was frivolous. A successful *Brady* claim requires three elements: (1) the evidence must have been favorable to the accused; (2) the evidence must have been suppressed by the State; and (3) prejudice must have ensued.[7] *Strickler v. Greene*, 527 U.S. 263,

---

[7] Although *Brady* claims are generally asserted by criminal defendants seeking to reverse their criminal convictions, the Ninth Circuit allows § 1983 plaintiffs to assert *Brady* claims so long as the plaintiff additionally shows "that police officers acted with deliberate indifference to

14

281-82 (1999). The requirement of "prejudice" in a *Brady* claim is not taken lightly. A criminal defendant will only prevail if "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id*. at 281.

Plaintiff was never convicted, nor was he ever charged by the County. Although the Ninth Circuit has not explicitly held that a conviction is a prerequisite for a *Brady* claim, *see Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011), three circuit courts have. *See Morgan v. Gertz,* 166 F.3d 1307, 1310 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."); *Flores v. Satz,* 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff ... was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of *Brady*."); *McCune v. City of Grand Rapids,* 842 F.2d 903, 907 (6th Cir. 1988) (holding that "[b]ecause the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence" and thus cannot maintain *Brady*-based § 1983 claim). In *Smith v. Almada*, the Ninth Circuit declined to decide whether a § 1983 plaintiff was barred from asserting a *Brady* claim after he spent five months in jail but was ultimately acquitted at a second trial. *See Almada*, 640 F.3d at 941-42.

Here, Plaintiff's allegation of prejudice was grounded solely on the delay and costs associated with obtaining a *favorable* determination of factual innocence. SAC ¶ 84. However, prejudice only exists in the *Brady* context when "there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281. After having prevailed at his factual innocence proceeding, Plaintiff had no reasonable basis to assert a *Brady* claim against the County. Although Plaintiff believes he made a "creative and novel use of *Brady*," the Court finds such an outlandish argument to be an expensive waste of time.

---

or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." *Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1088 (9th Cir. 2009).

### B. Whether the Amount of Attorneys' Fees Requested is Reasonable

The proper method for determining a reasonable fee award is the "lodestar method." *Hensley v. Echerhart*, 461 U.S. 424, 433 (1983). Under the lodestar method, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* A reasonable hourly rate must be determined by reference to the prevailing market rates in the relevant legal community "for similar work performed by attorneys of comparable skill, experience, and reputation." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam) (internal quotations and citations omitted). The court also considers whether the presumptively reasonable lodestar figure should be adjusted according to the factors described in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 69-70 (9th Cir. 1975). Such adjustments are only in "rare and exceptional circumstances." *Van Gerwen v. Guar. Mut. Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000).

Here, the County asserts that the proper lodestar amount may be calculated by multiplying 773.35 hours at $190 per hour for the the attorneys who worked on this case, plus 51.05 hours at $100 per hour for paralegal time, for a total amount of $152,041.50. The County also states that no adjustment to the presumptively reasonable lodestar method is necessary, as this case is not "rare or exceptional." *VanGerwen*, 214 F.3d at 1045.

#### 1. *Reasonable Hourly Rate*

The Court finds that the requested hourly rate of $190 per attorney hour is reasonable. First, the Court acknolwedges that $190 is well below the market rate for attorneys in the Bay Area. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (the district court may rely on its own familiarity with the local legal market to determine the prevailing rate). Moreover, the County submitted affidavits from each attorney who worked on this case showing various levels of experience, the most novice of which had gradutated from law school in 2004 and held a job at a prestigious law firm for several years before joining the San Mateo County Counsel's office. The County also submitted a case from this district which awarded $280 to an attorney who had

16

fewer years of experience than each of the six attorneys who worked on this litigation.[8] The Court is thus satisfied that $190 is a reasonable hourly rate for the attorneys in this action.

The County also requests $100 per paralegal hour spent defending this case. "[T]ime reasonably spent by law clerks and paralegals is compensable under section 1988." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). This Court has previously recommended an award of $150 per paralegal hour. *See Oster v. Standard Ins. Co.*, 768 F.Supp.2d 1026, 1034 (N.D. Cal. 2011) (Judge Armstrong adopting in full this Court's Report and Recommendation). Other courts in this district have similarly awarded greater than $100 per hour for the work of paralegals. *See Crosthwaite v. Brennan*, C 10-03940 CW LB, 2011 WL 589821 (N.D. Cal. Jan. 25, 2011) *report and recommendation adopted*, 4:10-CV-03940-CW, 2011 WL 588150 (N.D. Cal. Feb. 10, 2011) (awarding paralegal rates between $110 and $115 per hour). The Court therefore finds that $100 per hour is reasonable compensation for the time paralegals spent on this case.

### 2. *Reasonable Amount of Hours Expended*

Plaintiff argues the County did not submit sufficient evidence documenting the amount of hours expended on particular aspects of the litigation. The Court agrees. Exhibit 3 to the Wong Declaration explains the number of hours each attorney and/or paralegal spent on motion practice, depositions, court appearances, written discovery and case administration. *See* Declaration of Brian Wong in Support of the County of San Mateo's Motion for Attorneys' Fees ("Wong Decl.") ¶ 3 and Exhibit 3 thereto. The County did not distinguish between the time spent on each motion, each deposition, each court appearance, the type of discovery, or the type of case administration. The Court, therefore, does not have sufficient material to determine whether the amount of hours were excessive and unreasonable. By this order, the County is directed to file detailed time records showing all time recorded. Typically, this would be records indicating the tasks performed by each timekeeper on each date, and the amount of time spent on that date by each timekeeper.

---

[8] The Court grants the County's request for the Court to take judicial notice of the attorneys' fees order in *Cotton v. City of Eureka*, -- F.Supp.2d --- (2012), 2012 WL 3670704, *3-4 (N.D. Cal. Aug. 24, 2012).

17

1   As a final point, the Court addresses Plaintiff's contention that the County provided
2   insufficient documentation by failing to distinguish between the time spent on each claim.
3   Because *all* claims asserted against the County were frivolous, the County need not distinguish
4   between the time spent on each claim because the County is entitled to recover for all reasonable
5   hours spent defending all of the claims asserted against the County. *See Fox*, 131 S.Ct. at 2218.
6   Nor does it matter, as Plaintiff contends, whether the claims were asserted solely against the
7   County or against the Town of Atherton as well. *See* Dkt. No. (Plaintiff's Opposition to County's
8   Motion for Attorneys' Fees) at 19:25-27 to 20:1-3. The County spent many hours defending the
9   Plaintiffs' frivolous claims asserted against the County. The County is entitled to recover for all
10  reasonable hours defending these claims, regardless of whether or not the Court finds the claims
11  were also frivolous as asserted against the Town of Atherton.

## IV. CONCLUSION

For the foregoing reasons, the County's Motion for Attorneys' Fees is GRANTED. The County shall submit detailed time records within seven (7) days of the date of this order. Plaintiff has seven (7) days from the date the time records are filed to file a brief responding only to the time records. After receipt of these filings, the Court will determine the amount of the attorneys' fee award.

IT IS SO ORDERED.

Dated: Janurary 3, 2013

_____
Joseph C. Spero
United States Magistrate Judge